OPINION
{¶ 1} Appellant, T.B., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of four of her children to the Butler County Children Services Board ("BCCSB"). We affirm the juvenile court's decision.
 {¶ 2} Appellant is the natural mother of eight children, four of whom are the subject of this appeal: B.B. (born December 30, 1993), R.B. (born October 25, 1996), J.W. (born February 6, 2001), and S.B. (born April 12, 2002). The children's alleged fathers are not parties to this appeal.
 {¶ 3} In November 2001, B.B., R.B. and J.B. were living with appellant and K.W., appellant's fiancé and father of two of the children. The children were removed from the home that month by the West Chester Police Department when appellant's 13-year-old sister, who was in appellant's custody, gave birth to a child fathered by K.W. BCCSB had also received referrals alleging that the children were physically and sexually abused by K.W. In addition to the reports of abuse, BCCSB received referrals alleging that the children lacked adequate food, that the home lacked electricity, that the parents abused drugs and alcohol, and that the school-aged children were not enrolled in school.
 {¶ 4} In December 2001 BCCSB filed a complaint alleging that B.B, R.B., and J.W. were abused, dependent, and neglected children, and they were placed in foster care where they have remained since. Appellant gave birth to S.B. in April 2002, while incarcerated. He was removed from her care at birth and placed in a foster home where he has remained since.
 {¶ 5} Criminal charges were filed against K.W. alleging unlawful sexual conduct with a minor and sexual battery. He was convicted of the offenses and is presently incarcerated. Appellant was charged, and convicted of, endangering children and contributing to the delinquency of a minor, and served a six-month prison sentence. In June 2002 all four children were adjudicated neglected and dependent, and B.B. and R.B. were adjudicated abused children.
 {¶ 6} Upon appellant's release from prison, BCCSB formulated a case plan with the goal of reunifying appellant with the four children. She was granted supervised visitation and was required to participate in case plan services. When appellant failed to make progress toward reunification BCCSB moved for permanent custody. The following evidence was adduced at a series of hearings on the permanent custody motion held between January and July 2004:
 {¶ 7} In compliance with case plan requirements, appellant submitted to a substance abuse assessment and attended substance abuse education classes. She also completed a psychological evaluation. Otherwise, she failed to complete any other aspects of the case plan in two years, and indeed, voluntarily, and affirmatively, chose not to participate in other case plan services offered by BCCSB even though she maintained that reunification was her desire. Appellant failed to attend individual counseling on a regular basis as required by the case plan, nor did she complete the nonoffending abuse awareness group.
 {¶ 8} Appellant failed to demonstrate that she recognized her dependency issues, and in fact during the course of this proceeding began a relationship with a man who was later convicted of a sexual offense involving a minor. This man fathered appellant's eighth child. A treating doctor noted that appellant required prolonged psychotherapy on a weekly basis because she had no insight into the nature of her troubled relationships, and relates to others in a childlike manner.
 {¶ 9} Appellant assumed no responsibility for her failure to protect B.B. and R.B. from the sexual abuse perpetrated by K.W. She further failed to recognize that her failure to protect the girls had a severe emotional impact on them. Nor did she recognize that the physically abusive nature of her relationship with K.W. had any impact on the children. One therapist working with B.B. noted that she spoke of abusive incidents with little affect, as though it were routine and expected. R.B. has been hospitalized as a result of her self-mutilating behavior and aggression. Both B.B. and R.B. have been diagnosed with a variety of emotional and psychological disorders as a result of the physical and sexual abuse they suffered and witnessed.
 {¶ 10} Appellant failed to obtain and maintain either stable employment, or a stable residence. Since the children were first removed, appellant held three different jobs, none for longer than several months. She had several residences and lived independently for only one month. At the time of the hearing appellant was living with the paternal grandparents of her eighth child. Appellant was dependent on the grandparents to provide a stable environment for her children. BCCSB found even this residence to be suspect, and requested that the certain deficiencies be remedied before they would deem it appropriate. Some question was raised as to whether these grandparents would be committed to helping appellant with her four other children with whom they have no biological or emotional relationship. Appellant lacks any other social support system, and upon evaluation, was found to have little understanding of critical parenting skills.
 {¶ 11} The children have remained in foster care since their removal. The children have made physical and emotional progress while in foster care. All four children had formed strong bonds with their foster families, and while they seemed glad to see appellant during visits, did not display any distress when it came time to separate from appellant. The children view their foster parents as the parental figures in their lives while relating to appellant as a sibling. Because of their emotional and psychological needs, the children are acutely in need of a legally secure placement. Citing largely the evidence recited above, the children's guardian ad litem advocated that the motion for permanent custody be granted.
 {¶ 12} In October 2004, the juvenile court granted BCCSB's motion for permanent custody. Appellant appeals that decision, raising three assignments of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "The court erred as a matter of fact and law and abused its discretion when it found that permanent custody and/or termin-ation of the parental rights of the other was proper rather than a planned permanent living arrangement."
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "The court erred as a matter of fact and law and abused its discretion when [it] found terminating the parental rights of appellant to be in the child's best interests and when it so terminated the rights of appellant."
 {¶ 17} Assignment of Error No. 3:
 {¶ 18} "The court's decision and order of permanent custody was against the manifest weight of the evidence and failed to meet the requisite clear and convincing standard."
 {¶ 19} Because appellant's assignments of error are closely related, we will address them together. Pursuant to R.C. 2151.414-(B)(1), a trial court may grant permanent custody of a child to a state agency if the court finds, by clear and convincing evidence, that it is in the child's best interest to do so, and, as the trial court found relevant to the present case, that one of the following circumstances apply:
 {¶ 20} "(a) The child * * * cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 21} "* * *
 {¶ 22} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."
 {¶ 23} In making its best interest determination, the trial court is required to consider all relevant factors, including, but not limited to, the following factors enumerated in R.C. 2151.4-14(D):
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 29} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether there is competent, credible evidence in the record supporting the trial court's determination. In re Starkey,150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000), 138 Ohio App.3d 510,519-520.
 {¶ 30} After analyzing the best interest factors in R.C. 2151.4-14(D), the juvenile court found, by clear and convincing evidence, that permanent custody was in the children's best interest. Upon thoroughly reviewing the record, we find competent, credible evidence exists supporting the juvenile court's decision.
 {¶ 31} The trial court noted that B.B., R.B. and J.W. had been in foster care since November 2001, and S.B. had been in foster care since his birth in April 2002. See R.C.2151.414(D)(3). The children have bonded with their respective foster families and, while recognizing appellant as their biological mother, view their foster parents as the parental figures in their lives. While appellant interacted appropriately with the children during visits, and seemed to have a bond with the children, the relationship was observed by caseworkers to be more that of a sibling than of a parent. The children separated easily from appellant when visits were over. See R.C.2151.414(D)(1).
 {¶ 32} The trial court further noted the children's need for a secure, permanent placement due to the abuse they suffered, length of time they have been in foster care, and appellant's failure to secure a stable residence. See R.C. 2151.414(D)(4). The trial court noted that the father of J.W. and S.B. had been found guilty of three counts of unlawful sexual conduct with a minor, and two counts of sexual battery. See R.C. 2151.414(D)(5). Finally, the trial court noted that the children's guardian ad litem advocated that the motion for permanent custody be granted. See R.C. 2151.4-14(D)(2).
 {¶ 33} Having reviewed the record, we find that the trial court's best interest determination is supported by competent and credible evidence.
 {¶ 34} Additionally, we do not find that the court's decision was against the manifest weight of the evidence. Appellant did complete portions of her case plan, however failed to complete the majority of the case plan requirements. There is significant evidence in the record indicating that appellant could not provide a secure environment for the children. Of primary concern was that appellant had not participated in individual counseling as recommended, had not maintained stable employment or housing, and continued to lack understanding of critical parenting skills. These concerns, viewed in light of the long period of time the children had spent in BCCSB's temporary custody, support the juvenile court's decision granting permanent custody to BCCSB.
 {¶ 35} Because the children had been in the temporary custody of BCCSB well over the "twelve or more months of a consecutive twenty-two month period" in R.C. 2151.414(B)(1)(d), once the juvenile court found that permanent custody was in the children's best interest, the court had the statutory authority to grant permanent custody. See R.C. 2151.414(B)(1); In re Mercurio,
Butler App. No. CA2003-05-109, 2003-Ohio-5108, at ¶ 27. We find no error in the court's best interest determination, nor do we find error in the court's ultimate decision to grant BCCSB's motion for permanent custody rather than a planned permanent living arrangement.
 {¶ 36} Accordingly, we overrule appellant's first, second and third assignments of error, and affirm the decision of the juvenile court granting BCCSB's motion for permanent custody.
 {¶ 37} Judgment affirmed.
Young and Bressler, JJ., concur.