OPINION
{¶ 1} Appellant, Megan I., appeals the decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter, J.I., to the Preble County Job and Family Services (the "Agency"). We affirm the juvenile court's decision.
 {¶ 2} Megan was fifteen years old and in the custody of the Agency when on April 20, 2003 she gave birth to her daughter J.I. Two days later, the Agency filed a complaint alleging that J.I. was dependent and seeking temporary custody of her. The Agency was granted temporary custody of J.I. on April 28, 2003. Because Megan was already in a Planned Permanent Living Arrangement ("PPLA"), the Agency subsequently asked that J.I. be placed in a PPLA, so that Megan could parent her daughter. On July 2, 2003, Megan entered a plea of admit to the allegation that J.I. was dependent. On December 8, 2003, J.I. was placed in a PPLA. Megan and her daughter were subsequently placed together in Debra Wolfe's foster home.
 {¶ 3} Because of behavioral problems, which included two hospitalizations for depression and suicidal ideations, Megan was removed from Debra Wolfe's home on April 6, 2004. J.I. remained at Debra Wolfe's home. In September 2004, J.I. was placed in the Harpers' foster home where she has been since. Meanwhile, Megan was placed in Norma Mitchell's home. Her placement there, however, only lasted three months. Because of behavioral problems, which included a school suspension, hospitalization for an apparent suicide attempt, sneaking out of the house, and receiving phone calls from men, Megan was removed from the Mitchell home and temporarily placed at Kettering Youth Services. In July 2004, Megan was placed at Adriel, a very structured group residential home, after no foster home could be located for her.
 {¶ 4} On October 28, 2004, the Agency moved for permanent custody of J.I. under R.C. 2151.413(C), on the ground that Megan had "not demonstrated increasing maturity or a consistent desire to make good decisions for herself or her infant." The motion also stated that J.I. "ha[d] been in the custody of the Agency since April 2003." A hearing was held on the motion. On April 25, 2005, the juvenile court granted permanent custody of J.I. to the Agency and terminated Megan's parental rights.
 {¶ 5} In its decision and entry, the juvenile court found, by clear and convincing evidence, that J.I. had "been in the custody of [the Agency] for 12 of 22 consecutive months," and that it was in the best interest of J.I. to grant permanent custody to the Agency. The juvenile court further stated that "[w]hile not necessary in order to grant the motion under the `12 of 22' provision, the Court also finds [that] * * * Megan has failed continually and repeatedly to remedy the conditions causing the child to be placed away from the mother, * * * [and] has demonstrated a lack of commitment to [J.I.] * * *." The juvenile court based its decision on R.C. 2151.413(D)(1)[1] as well as R.C. 2151.414(B)(1)(d) and (D). This appeal follows.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED PERMANENT CUSTODY OF APPELLANT'S CHILD TO THE STATE BASED ON [R.C.] 2151.413(D) WHEN THE MOTION WAS BROUGHT UNDER [R.C.] 2151.413(C)."
 {¶ 8} The juvenile court granted permanent custody of J.I. to the Agency after finding that J.I. had been in the custody of the Agency for 12 of 22 consecutive months pursuant to R.C. 2151.414(B)(1)(d) (the "`12 of 22' rule"). Megan argues that the trial court erred by applying the "12 of 22" rule to the case at bar. Megan contends that because J.I. was in a PPLA, and not in the Agency's temporary custody at the time the Agency moved for permanent custody, the juvenile court was prohibited from applying the "12 of 22" rule, and was instead required to address the Agency's motion under R.C. 2151.414(B)(1)(a). We disagree.
 {¶ 9} The Agency moved for permanent custody under R.C. 2151.413(C) which states that "A public children services agency * * * that * * * places a child in a planned permanent living arrangement may file a motion in the court that made the disposition of the child requesting permanent custody of the child." Under R.C. 2151.413(D)(1), "if a child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *, the agency with custody shall file a motion requesting permanent custody of the child."
 {¶ 10} R.C. 2151.414(B)(1), in turn, provides that "the court may grant permanent custody of a child to a movant if the court determines at the [permanent custody] hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 11} "(a) The child is not abandoned or orphaned and has not been in the temporary custody of one or more [agencies] * * * for twelve or more months of a consecutive twenty-two month period * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 12} "* * * [or]
 {¶ 13} "(d) The child has been in the temporary custody of one or more [agencies] * * * for twelve or more months of a consecutive twenty-two month period[.]"
 {¶ 14} The essence of Megan's argument is that temporary custody and PPLA are two different, separate dispositional status under R.C. Chapter 2151, and that since a child placed in a PPLA is not in an agency's temporary custody, the period of time a child is placed in a PPLA cannot be counted to satisfy the 12-month period of the "12 of 22" rule for purposes of permanent custody. We disagree.
 {¶ 15} A PPLA is "an order of a juvenile court pursuant to which both of the following apply: (a) The court gives legal custody of a child to a public children services agency * * * without the termination of parental rights[;] (b) The order permits the agency to make an appropriate placement of the child and to enter into a written agreement with a foster care provider or with another person or agency with whom the child is placed." R.C. 2151.011(B)(36). "Temporary custody" is defined as the "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court * * *." R.C. 2151.011(B)(52). Like a PPLA, temporary custody does not involve the termination of parental rights. Whether a child is in a PPLA or in an agency's temporary custody, the supervising authority ultimately responsible for the child is the agency. Whether a child is in a PPLA or in an agency's temporary custody, the agency can institute a permanent-custody action under R.C. 2151.413. Thus, neither status prohibits an agency from seeking permanent custody of a child. A PPLA can be used as a further dispositional alternative after a prior temporary custody order has expired. See R.C. 2151.415(A)(5).
 {¶ 16} As we see it, the only difference between a PPLA and temporary custody is the duration of the status. While an agency may file for permanent custody when a child is in a PPLA, the agency must file for permanent custody once a child has been in its temporary custody for at least 12 months. This is a difference without a distinction.
 {¶ 17} We therefore hold that if a child is in a PPLA when an agency files for permanent custody of the child, a juvenile court can apply the "12 of 22" rule of R.C. 2151.414(B)(1)(d) in determining whether to grant the agency's motion. We further hold that if a child has not been in the agency's temporary custody for at least 12 months at the time the agency moves for permanent custody, but the child was subsequently placed in a PPLA, as in the case at bar, the juvenile court can count the period of time the child was in a PPLA and the period of time the child was in the agency's temporary custody together to satisfy the 12-month period of temporary custody set forth in R.C. 2151.414(B)(1)(d), as long as those two periods were consecutive to one another. Finally, we hold that if a child has been in a PPLA for at least 12 months at the time the agency moves for permanent custody, this satisfies the 12-month period set forth in R.C. 2151.414(B)(1)(d). We find that our holding satisfies the purposes of R.C. Chapter 2151, in that it affords parents a full 12-month period to work toward reunification, yet allows a speedy resolution of a child's custody. See In re C.W., 104 Ohio St.3d 163, 2004-Ohio-6411.
 {¶ 18} In the case at bar, J.I. was placed in the temporary custody of the Agency on April 28, 2003, and in a PPLA on December 8, 2003. The Agency moved for permanent custody on October 28, 2004. Counting the period of time J.I. was in temporary custody and in a PPLA, it is clear J.I. was in the Agency's custody for at least 12 months for purposes of R.C. 2151.414(B)(1)(d). The juvenile court, therefore, did not err by finding that J.I. had been in the temporary custody of the Agency for at least 12 months[2] pursuant to R.C. 2151.414(B)(1)(d). Megan's first assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "THE COURT'S DECISION AND ORDER GRANTING PERMANENT CUSTODY TO THE STATE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 21} Megan first argues that the Agency failed to prove by clear and convincing evidence that J.I. could not be placed with her within a reasonable time.[3] Megan also argues that the juvenile court's finding that it was in J.I.'s best interest to grant permanent custody to the Agency was against the manifest weight of the evidence.
 {¶ 22} Because we have held that the juvenile court properly found that J.I. was in the temporary custody of the Agency for at least 12 months pursuant to R.C. 2151.414(B)(1)(d), we need not address whether the Agency failed to prove J.I. could not be placed with Megan within a reasonable time. See In re C.W., 104 Ohio St.3d 163, 2004-Ohio-6411 (An agency need no longer prove that a child cannot be returned to his parents within a reasonable time or should not be returned to the parents, so long as the child has been in the temporary custody of an agency for at least 12 months); In re L.D., Clinton App. No. CA2004-03-007, 2004-Ohio-4000. We will, therefore, only consider whether the juvenile court's finding that granting permanent custody to the Agency was in the best interest of J.I., was against the manifest weight of the evidence.
 {¶ 23} Under R.C. 2151.414(B)(1)(d), a juvenile court may grant permanent custody of a child to a state agency if the court finds, by clear and convincing evidence, that it is in the child's best interest to do so, and that the child has been in the temporary custody of the agency for at least 12 months. In determining whether permanent custody is in the child's best interest, the juvenile court is required to consider all relevant factors, including: (1) the interaction and interrelationship of the child with his parents, siblings, relatives, and foster caregivers, (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more agencies for at least 12 months, and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. See R.C. 2151.414(D).
 {¶ 24} An appellate court's review of a juvenile court's decision finding clear and convincing evidence is limited to whether there is competent, credible evidence in the record supporting the juvenile court's determination. In re S.B., Butler App. Nos. CA20041-2-305/306/307/308, 2005-Ohio-3889, ¶ 29. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id.
 {¶ 25} The juvenile court found by clear and convincing evidence that permanent custody was in J.I.'s best interest. Upon thoroughly reviewing the record, we find competent, credible evidence exists supporting the juvenile court's decision.
 {¶ 26} The juvenile court noted that J.I. had been in the Agency's custody since her birth in April 2003, "a continuous period of almost 23 months at the time of" the permanent custody hearing. While J.I. was bonded with her mother, the court noted that J.I. was also bonded with her current foster family. During the permanent custody hearing, there was testimony that when visiting J.I., Megan (1) was at times careless with J.I., seemingly treating her more like a doll than a child, (2) persisted for a long time in using "baby talk" with J.I. even though this was not helpful as J.I. was delayed in language development, and (3) did not always engage in age appropriate activities with J.I. The juvenile court noted that while J.I. was somewhat delayed when she was placed with her current foster family, she has improved under their care.
 {¶ 27} The juvenile court further noted J.I.'s need for a stable, secure, permanent placement "which for her as a two year old can be best achieved by a granting of permanent custody." As the court stated, "[Megan] has not done anything consistently over the last two years to convince the Court or [the Agency] that she could provide that stability. [Megan] created the situation that caused her to be moved from her placement with Debra Wolf[e] and her daughter. * * * She's the one who has attempted suicide several times. She's the one who has acted irresponsibly and dangerously sexually. She's the one who has acted irresponsibly medically by hording her meds [which she later used in attempting suicide]."
 {¶ 28} Finally, the juvenile court noted that J.I.'s guardian ad litem advocated that the motion for permanent custody be granted. In her last report, which was filed two months before the permanent custody hearing, the guardian ad litem noted that she saw J.I. at the home of her current foster family when J.I. was about 19 months old: "Most noted was the marked improvement [J.I.] has made in development. She was walking and communicating with the foster parents. * * * She [is] now on target regarding prior developmental concerns." The guardian ad litem also noted that Megan and J.I. were bonded and interacted well, but that J.I. "also interacts well" with her current foster family. The guardian recommended the granting of the motion because:
 {¶ 29} "[J.I.] has been in foster care for 20 months. She is in her second foster care placement. She deserves a secure and permanent home. If placed with her Mother, there would be great risk that she could be moved again based on Mother's history of placement changes. [PPLA] is not the best option for a child this age. She is not two years of age yet. To have her linger in foster care for an indefinite period of time is not fair to her. PPLA was a good option for this child at the beginning of this case when mother was parenting the child and showing a good effort to maintain her placement with [J.I.]. This is not the case now."
 {¶ 30} In light of the foregoing, we find that the juvenile court's finding that it was in J.I.'s best interest to grant permanent custody to the Agency was not against the manifest weight of the evidence. Because J.I. had been in the temporary custody of the Agency for at least 12 months pursuant to R.C. 2151.414(B)(1)(d), once the juvenile court found that permanent custody was in J.I.'s best interest, the court had the statutory authority to grant permanent custody. In re Mercurio, Butler App. No. CA2003-05-109, 2003-Ohio-5108, ¶ 27. We therefore find no error in the juvenile court's ultimate decision to grant the Agency's motion for permanent custody. Megan's second assignment of error is overruled.
 {¶ 31} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.
[1] We are mindful that the juvenile court never cited R.C. 2151.413(D)(1) in its entry. Instead, the juvenile court stated that the Agency's motion for permanent custody was based upon the "12 of 22" rule provided in R.C. 2151.414, and quoted R.C. 2151.414(D)(1) for the proposition that if a child has been in the temporary custody of an agency for 12 or more months of a consecutive 22 months period, the agency shall move for permanent custody. A review of R.C. Chapter 2151 shows that the language quoted by the juvenile court belongs to R.C. 2151.413(D)(1), and not R.C. 2151.414(D)(1).
[2] Megan also argues that even if the "12 of 22" rule applies, she did not have a full 12 months to show suitability, as the permanent custody motion was filed only six months after Megan was removed from Debra Wolfe's foster home. Megan's argument assumes that a child must be in the temporary custody of an agency for 12 consecutive months before a permanent custody motion is filed. Such is not the case. When applying the "12 of 22" rule, R.C. Chapter 2151 does not require that a child be in an agency's temporary custody for 12 consecutive months. Rather, it requires that a child be in the temporary custody of an agency for a cumulative total of 12 months in a period of 22 consecutive months.
[3] R.C. 2151.414(E) sets forth a list of 16 predicate findings, one of which must be established before a juvenile court can determine that a child cannot or should not be placed with the child's parents. We note that while the juvenile court found that two of the 16 predicate findings existed (to wit, failure to remedy the conditions that caused the child's removal, and lack of commitment toward the child), it never entered a finding that J.I. could not be placed with Megan within a reasonable time or should not be placed with her, as required under R.C. 2151.414(E). SeeIn re Weaver (1992), 79 Ohio App.3d 59; In re Shanequa H. (1996),109 Ohio App.3d 142. Had we not found that the "12 of 22" rule applied in the case at bar, the court's failure to enter such finding would have mandated a reversal of the court's decision and a remand.