[Cite as *In re J.K.*, 2012-Ohio-214.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

IN THE MATTER OF:                          :    Case No. 11CA3269

   J.K.                                    :

Adjudicated Dependent Child.               :    DECISION AND JUDGMENT ENTRY

_____

APPEARANCES:

COUNSEL FOR APPELLANT:     John K. Clark, Jr., 17 South Paint Street, Chillicothe,
                           Ohio 45601

COUNSEL FOR APPELLEE:      Matthew S. Schmidt, Ross County Prosecuting
                           Attorney, and Jennifer L. Ater, Ross County Assistant
                           Prosecuting Attorney, 72 North Paint Street, Chillicothe,
                           Ohio 45601

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 1-18-12
ABELE, P.J.

{¶ 1}  This is an appeal from a Ross County Common Pleas Court, Juvenile

Division, judgment that awarded Ross County Job and Family Services Children's Division,

appellee herein, permanent custody of J.K. (born October 18, 2000).

{¶ 2}  G.K., the child's natural mother and appellant herein, assigns the following

error for review:

> "THE TRIAL COURT ERRED IN GRANTING PERMANENT
> CUSTODY BY NOT REQUIRING ROSS COUNTY
> CHILDREN'S SERVICES TO USE ITS BEST EFFORTS TO
> AVOID AN AWARD OF PERMANENT CUSTODY WHEN PPLA
> (PLANNED PERMANENT LIVING ARRANGEMENT) WAS
> STILL WORKING AND NO CHANGES HAVE OCCURRED."

{¶ 3} Appellee has been actively involved in the child's life since March 20, 2002, when it filed a complaint that alleged the child to be a dependent child. Appellee alleged that the child's home environment was unsanitary. After the court found the child dependent, it placed the child in appellee's temporary custody. The child then lived with his maternal grandparents, but the court allowed the parents to exercise unsupervised visitation.

{¶ 4} Over the next few years, the child continued to live with his grandparents, with some intervention from appellee. On January 13, 2006, appellee filed a motion to place the child in a planned permanent living arrangement. On September 21, 2006, the magistrate recommended that the court place the child in a PPLA. The magistrate found: (1) the child has been in appellee's temporary custody since August 24, 2004; (2) the child's parents "have significant physical, mental, or psychological problems and are unable to care for the child because of those problems"; (3) the "child has a significant and positive relationship with his parents, maternal grandparents, and siblings, such that a continued meaningful relationship with said parents and relatives is in the child's best interest"; (4) no appropriate relatives are available to care for the child; (5) appellee "has considered all other possible dispositions for said child" and (5) the parents consented to a PPLA. On that same date, the trial court adopted the magistrate's decision.

{¶ 5} On May 18, 2009, appellee filed a motion for permanent custody. Appellee asserted that the child recently underwent a psychological evaluation, which indicated that the child would benefit from being adopted by his foster parents.

{¶ 6} On March 14, 2011, the guardian ad litem filed a report that observed: (1) the

child has been with the foster family for five years; (2) when the guardian ad litem met with the child, the child stated that he is not "sad" when he does not get to see his mother; and (3) the child loves his biological mother, but feels that the foster parents are his parents. The guardian ad litem believed that the adoption is in the child's best interests. He noted that despite ample opportunity, appellant has been unable to provide a stable home for the child.

{¶ 7} On June 22, 2011, the child's attorney filed a written argument. In it, the attorney stated that it would be in the child's best interest for the court to grant appellee permanent custody:

> "This child is clearly better off with his current foster parents if they have the option to pursue adopting him. [The child] is bonded with his current home and foster parents who are ready, willing and able to adopt him. He has been in a PPLA since September 2006. He is not as bonded with either of his parents, and both parents have been proven to be unsuitable for his care and nurture."

He continued: "The life this child looks forward to with the fine foster parents (who intend to adopt) is almost an idyllic life compared to the abysmal, subsistence-level and porn culture which the parents subjected him to." The attorney further stated that the child is happy in his foster home and wishes to stay there.

{¶ 8} On August 1, 2011, the magistrate recommended that the trial court award appellee permanent custody. The magistrate found: (1) on September 28, 2005, the child was placed in the Garman foster home, where he has since remained; (2) the parties agreed to a PPLA in September 2006; (3) appellant regularly visited the child, but is unable to have home visits or overnight visits; (4) appellant has not maintained stable housing and her personal hygiene continues to be a problem; (5) the child has done well in his current

foster home and in school; (6) the child is "very bonded" to his foster family and refers to the foster parents as "Mommy and Daddy"; (7) the child has acted out after visits; (8) the child is not upset if a visit is cancelled; (9) the foster parents wish to adopt the child and would maintain contact with the child's biological relatives; (10) being adopted would provide the child "with a more normal and stable environment"; (11) the child was counseled on the issue of adoption and did not express a preference; (12) the child is in need of a legally secure placement that cannot be granted without permanent custody; (13) appellee has made reasonable efforts; and (14) it is in the child's best interest to place the child in appellee's permanent custody.

{¶ 9} The trial court subsequently adopted the magistrate's decision, and this appeal followed.

{¶ 10} In her sole assignment of error, appellant argues that the trial court erred by awarding appellee permanent custody. Appellant asserts that the trial court should have determined that placing the child with a relative or continuing the child in a PPLA would serve the child's best interests. She suggests that a trial court must find that a child is unqualified for a PPLA before awarding permanent custody to a children's services agency and that permanent custody cannot be in a child's best interest when a PPLA would serve those same interests. In essence, appellant asserts that the trial court is required to choose the least drastic alternative. She also asserts that the trial court erred by failing to consider the child's wishes.

{¶ 11} Appellee argues that appellant did not file Juv.R. 40(D) objections to the magistrate's decision and, thus, has waived the right to assign error on appeal.

A

FAILURE TO FILE OBJECTIONS

**{¶ 12}** Initially, we consider appellee's argument that appellant has waived the right to assign the trial court's adoption of the magistrate's decision as error on appeal.[1]  We recently addressed this same issue in <u>In re D.N.</u>, Ross App. No. 11CA3203, 2011-Ohio-4627:

> "'The juvenile rules require written objections to a magistrate's decision to be filed within 14 days of the decision.  Juv.R. 40(D)(3)(b)(I). The rules provide that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's [adoption] of any factual finding or legal conclusion * * * unless the party has objected to that finding as required by Juv.R. 40(D)(3)(b)." Juv.R. 40(D)(3)(b)(iv).  This waiver under the rule embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal.  <u>In re Etter</u> (1998), 134 Ohio App.3d 484, 492.'"

Id. at ¶21, quoting <u>In re D.S.</u>, Clermont App. Nos. CA2010–08–058, CA2010–08–064, & CA2010–08–065, 2011–Ohio–1279, at ¶31.

**{¶ 13}** Thus, the failure to file written objections challenging a finding of fact or conclusion of law precludes a party from assigning as error on appeal the court's adoption

---

[1]  On December 6, 2011, appellant filed a reply to appellee's brief.  Appellant asserts that objections to the magistrate's decision were "impossible and not necessary," because the trial court immediately adopted the magistrate's decision.   Appellant's assertion is incorrect.

Civ.R. 53(D)(3)(b)(I) states that "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(I)."

Civ.R. 53(D)(4)(e)(I) permits a court to "enter a judgment either during the fourteen days permitted by Civ.R. 53(D)(3)(b)(I) for the filing of objections to a magistrate's decision or after the fourteen days have expired."   "If the court enters a judgment during the fourteen days permitted by Civ.R. 53(D)(3)(b)(I) for the filing of objections," a party is not excused from filing objections to the magistrate's decision.   Civ.R. 53(D)(4)(e)(I).   Rather, "the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered."   Id.

Thus, under the plain terms of Civ.R. 53, the trial court's immediate adoption of the magistrate's decision did not render it impossible or unnecessary for appellant to object to the magistrate's decision.

of that finding or conclusion, absent plain error.   In re Z.A.P., 177 Ohio App.3d 217,

2008-Ohio-3701, 894 N.E.2d 342, ¶15.   The plain error doctrine is applicable in civil cases

only where the error "seriously affects the basic fairness, integrity, or public reputation of

the judicial process[.]"   Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 123, 679 N.E.2d

1099.

{¶ 14} Moreover, when a party fails to file objections to a magistrate's decision, an

appellate court may not consider a transcript of the hearing before the magistrate.   As we

explained in Z.A.P. at ¶¶21-23:

> "Under Juv.R. 40(D)(3)(b)(iii), a party objecting to a magistrate's
> factual finding is required to support the objection with a transcript of all the
> evidence submitted to the magistrate relevant to that finding.   The trial
> court may properly adopt a magistrate's factual findings without further
> consideration when the objecting party fails to provide the court with a
> transcript of the magistrate's hearing or other relevant material to support
> their objections.   In re Maxwell, Ross App. No. 05CA2863, 2006-Ohio-527,
> 2006 WL 290292, at ¶27, citing Proctor v. Proctor (1988), 48 Ohio App.3d
> 55, 60, 548 N.E.2d 287, in turn citing Purpura v. Purpura (1986), 33 Ohio
> App.3d 237, 515 N.E.2d 27.
>
> The fact that [appellant] failed to file objections at the trial level and
> failed to provide the trial court with a transcript or affidavit precludes us from
> considering the transcript she has submitted in this appeal.   See Maxwell,
> 2006-Ohio-527, 2006 WL 290292, at ¶28, citing Lincoln S. & L. Assn. v.
> Damron, Lawrence App. No. 02CA4, 2003-Ohio-2596, 2003 WL 21152844.
> See also State ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio
> St.3d 728, 730, 654 N.E.2d 1254.   "This is because appellate courts will
> not take into consideration evidence not presented before the trial court.'
> Maxwell, citing Unger v. Reams (Aug. 6, 1993), Lake App. No. 92-L-116,
> 1993 WL 317448.   Furthermore, '[w]hen portions of the record necessary
> for the determination of an assigned error are absent, the reviewing court
> has nothing to pass on and has no choice but to presume the validity of the
> trial court's proceedings.'   Lincoln at ¶27, citing Metzger v. Metzger (Aug.
> 21 1989), Crawford App. No. 3-87-39, 1989 WL 94813.

{¶ 15} Without the transcript properly before us, we simply have no basis to

conclude that the trial court erred in adopting the magistrate's factual findings. To the extent that [appellant]'s assignment of error is based on challenges to the factual findings, we must presume the validity of the trial court's proceeding and reject her contention that the trial court erred in adopting the magistrate's decision."

{¶ 16} In the case sub judice, appellant did not object to the magistrate's decision. Thus, we may review the trial court's decision only for plain error. Furthermore, because the transcript was not before the trial court, we may not consider it. Consequently, based upon our review of the limited record before us, we are unable to conclude that the trial court's awarding permanent custody to appellee constitutes plain error.

B

STANDARD OF REVIEW

{¶ 17} Generally, an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re Perry, Vinton App. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶40, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Thus, our review of a trial court's permanent custody decision is deferential. See In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶17. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461

N.E.2d 1273: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."   Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."   Davis v. Flickinger (1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, In re Christian, Athens App. No. 04CA10, 2004-Ohio-3146.

C

## STANDARD FOR GRANTING PERMANENT CUSTODY

{¶ 18} A trial court may not grant a permanent custody motion absent clear and convincing evidence to support the judgment.   The Ohio Supreme Court defined "clear and convincing evidence" as:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.   It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.   It does not mean clear and unequivocal."

{¶ 19} In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, Schiebel, 55 Ohio St.3d at 74.   In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."   Schiebel, 55 Ohio St.3d at 74.

D

## PERMANENT CUSTODY PRINCIPLES

**{¶ 20}** A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children.  Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169; see, also, In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829.  A parent's rights, however, are not absolute.  See D.A. at ¶11.  Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'"  In re Cunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App.1974), 300 So.2d 54, 58).  Thus, the state may terminate parental rights when a child's best interest demands such termination.  D.A. at ¶11.

**{¶ 21}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.  The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.  See R.C. 2151.414(A)(1).  Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

> (A) To provide for the care, protection, and mental and physical development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.

E

PERMANENT CUSTODY FRAMEWORK

{¶ 22} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶ 23} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See, e.g., In re T.F., Pickaway App. No. 07CA34, 2008-Ohio-1238, at ¶23; In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205; In re Dyal (Aug. 9, 2001), Hocking App. No. 01CA11. Consequently, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the only other consideration becomes the child's best interests. A trial court need not conduct an R.C. 2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time. Dyal; see, also, In re Berkley, Pickaway App. Nos. 04CA12, 04CA13, and 04CA14, 2004-Ohio-4797, at ¶61.

F

BEST INTERESTS

{¶ 24} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests will be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors

listed under R.C. 2151.414(E)(7) to (11) apply.[2]

{¶ 25} In the case at bar, we do not believe that the trial court  erred when it applied the best interest factors and determined that they support awarding appellee permanent custody of the child.   As the court's decision notes, the child is bonded to the foster family and is not as bonded with appellant.   The child's guardian ad litem and attorney both recommended that the court award appellee permanent custody.   The record shows that the child has been involved with children services for the majority of his young life and has

---

[2] R.C. 2151.414(E)(7) to (11) provide as follows:

(7) The parent has been convicted of or pleaded guilty to one of the following:

(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 [2151.41.2] of the Revised Code.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

not had a stable home, except for his time with the current foster family. Without appellee's intervention, the child lacks a legally secure permanent placement. While appellee has maintained the child in a PPLA for several years, appellee now believes that permanent custody, with adoption as the goal, will further the child's best interests by providing the foster family with the authority to make decisions on the child's behalf and by providing the child with a sense of permanency. Based upon the foregoing factors, we conclude that the trial court did not err by awarding appellee permanent custody.

{¶ 26} Appellant asserts that the trial court committed reversible error by failing to consider the child's wishes. However, nothing in the limited record shows that the court failed to consider the child's wishes. Because this alleged error has not been properly preserved, we presume the regularity of the trial court proceedings and presume that the trial court considered all relevant factors.

{¶ 27} Appellant also asserts that the trial court was first required to find that the PPLA is not in the child's best interests before it awarded appellee permanent custody is without merit. Her argument, however, is similar to the one rejected in In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶64. In Schaefer, the court held that a trial court does not have a duty to find that terminating parental rights is the "only way" to provide the children with a legally secure placement. The court explained:

> "[The court has no duty to] determine by clear and convincing evidence that 'termination of appellant's parental rights was not only a necessary option, but also the only option.' Nor did that duty include the requirement that the juvenile court find by clear and convincing evidence that no suitable relative was available for placement. The statute requires a weighing of all the relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through

(d).   The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor.   The statute does not even require the court to weigh that factor more heavily than other factors."

**{¶ 28}** Id.   Based upon this rationale, we reject appellant's argument that the trial court erred by failing to determine that the PPLA no longer served the child's best interests.

**{¶ 29}** Moreover, we observe that the Tenth District has rejected the argument that a child who qualifies for PPLA cannot eventually qualify for permanent custody.   See In re M.P., Franklin App. No. 10AP-478, 2010-Ohio-5877.   The court explained:

" * * * [C]lear statutory language undercuts appellant's argument. R.C. 2151.413(C) expressly provides that '[a] public children services agency or private child placing agency that, pursuant to an order of disposition' under R.C. 2151.353(A)(5), 'places a child in a [PPLA] may file a motion in the court that made the disposition of the child requesting permanent custody of the child.'   The juvenile court further maintains continuing jurisdiction pursuant to R.C. 2151.353(E)(1) over 'any child for whom the court issues an order of disposition' under R.C. 2151.353(A) or 2151.414 or 2151.415. Id.   Lastly, under R.C. 2151.353(E)(2), '[a]ny public children services agency * * *, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition.'   Id. The statutory provisions thus establish FCCS could move for permanent custody even after the children were placed in a PPLA.
     Ohio courts also recognize the evolving nature of such custody cases, granting motions for permanent custody where the children were previously in a PPLA.   See, e.g., In re K.R., 5th Dist. No.2009 CA 00061, 2009-Ohio-4350 (affirming trial court's grant of permanent custody where agency filed motion for permanent custody while child was in a PPLA); In re Hess, 5th Dist. No.2007CA00262, 2008-Ohio-1920 (affirming trial court's grant of permanent custody to agency where child had previously been in a PPLA); In re J.I., 12th Dist. No. CA2005-05-008, 2005-Ohio-4920, ¶15 (affirming trial court's grant of permanent custody to agency where child was in a PPLA at time of motion for permanent custody, and noting '[w]hether a child is in a PPLA or in an agency's temporary custody, the agency can institute a permanent-custody action under R.C. 2151.413'). Thus, appellant's argument that the trial court acted improperly in converting the children's PPLA status to permanent custody is without merit."

Id. at ¶¶23-24.

{¶ 30} Furthermore, to the extent appellant contends that the trial court should have placed the child with a relative, we have previously rejected the argument that a court must consider relative placement before awarding a children services agency permanent custody. We stated:

> "[T]he [permanent custody] statute does not require a juvenile court to consider relative placement before granting [a] motion for permanent custody. See In re Dyal (Aug. 9, 2001), Hocking App. No. 01 CA 11; In the Matter of Knight (Mar. 22, 2000), Lorain App. Nos. 98CA72589 and 98CA726698. In other words, a juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request. Id. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law, and the willingness of a relative to care for the child does not alter the statutory factors to be considered in granting permanent custody. See Dyal; In re Jefferson (Oct. 25, 2000), Summit App. Nos. 20092 and 20110; In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124. Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest. See Dyal; Patterson; Benavides. The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. In re Adoption of Ridenour (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. See In re Schaefer, 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶64; see, also, In re Dyal, Hocking App No. 01CA11, 2001–Ohio–2383; see, also, In re Lewis, Athens App. No. 01CA20, 2001–Ohio–2618; In re Wilkenson, (Oct 12, 2001), Hamilton App. No. C–010402, C–010408; Knight."

In re A.C.H., Gallia App. No. 11CA2, 2011-Ohio-5595, ¶44.

{¶ 31} Consequently, we reject appellant's arguments that the trial court should have considered a placing the child with a relative or continuing the child in the PPLA before awarding appellee permanent custody. We further reject her argument that the trial court erred by awarding appellee permanent custody.

{¶ 32} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Kline, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk