DECISION AND JUDGMENT ENTRY
{¶ 1} This is a consolidated appeal from judgments of the Sandusky County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellants Lisa G. and Kevin G. For the reasons that follow, this court affirms the judgment of the trial court.
{¶ 2} Appellant Lisa G. sets forth the following assignment of error:
{¶ 3} "The Trial Court erred to the prejudice of Appellant and Abused its discretion by granting the Motion for Permanent Custody since the Agency failed to prove by clear and convincing evidence, and the Trial Court failed to consider whether granting the Motion was in the Children's Best Interest."
{¶ 4} Appellant Kevin G. sets forth the following assignments of error:
{¶ 5} "The trial court erred and abused its discretion in granting the motion for permanent custody filed by Sandusky County Job and Family Services, because the evidence presented failed to meet the burden of proof placed on the agency, of clear and convincing evidence that granting the motion was in Julia [G.'s] best interests.
{¶ 6} "The trial court erred and abused its discretion in granting the motion for permanent custody filed by Sandusky County Job and Family Services, because the magistratae in her decision with findings and conclusions of law made erroneous findings of fact, and failed to include in her findings of fact evidence which was substantial and relevant, both of which errors prejudicially effected [sic] the outcome of the case."
{¶ 7} Appellants Lisa G. and Kevin G. are married. Lisa G. is the natural mother of Rebecca S., Hannah J. and Dustin J. Appellant Kevin G. is the natural father of Julia G. Kevin G.'s appeal concerns only his daughter Julia. Lisa G.'s appeal is brought as to her three children. The natural fathers of Lisa G.'s three children are not parties to this appeal, nor is the natural mother of Kevin G.'s daughter Julia.[1]
{¶ 8} On January 13, 2000, the Sandusky County Department of Jobs Family Services ("the agency") filed complaints alleging that Julia, Dustin and Hannah were dependent children and that Rebecca was an abused, neglected and dependent child. In the complaints, the agency alleged that the home was filthy and that Lisa G. was smoking crack cocaine and marijuana in front of the children. The agency asked for protective supervision of all the children. An initial hearing on the complaint was held on March 6, 2001, at which time the trial court found that continued residence in the home would not be contrary to the children's best interest and welfare. The matter then was set for adjudicatory and dispositional hearings. On May 17, 2000, Julia, Dustin and Hannah were adjudicated dependent children. Lisa G. consented to Rebecca's being adjudicated dependent and neglected. The trial court then ordered that the children remain in the home with Kevin G. under the protective supervision of the agency. Lisa G. was to have visitation with the children four times each week to be supervised by Kevin G. Case management services were offered to the parties. On October 25, 2000, the agency applied for and was granted an ex parte order modifying Lisa G.'s visitation from supervised by Kevin G. in his home to supervised only at the Village House or agency premises. The order was based on a caseworker's affidavit attesting that Lisa G. was having unsupervised contact with the children and was in fact living in their home. The caseworker also attested that Kevin G. told the children that he would put a bullet in her head if she went to their house "to make trouble." On November 8, 2000, following a shelter care hearing on the agency's motion to modify protective supervision to emergency temporary custody, the four children were removed from the home. Shortly thereafter, interim temporary custody was modified to temporary custody with the agency. The children have remained in foster care since that date.
{¶ 9} On January 4, 2002, the agency filed its first motion requesting that temporary custody be modified to permanent custody. Also on that day, Lisa G. filed a motion to return the children. A five-day evidentiary hearing began on July 29, 2002.
{¶ 10} On September 13, 2002, the magistrate filed a detailed 78-paragraph decision finding that all parental rights with regard to Julia, Rebecca and Hannah should be terminated and that the children should be placed in the permanent custody of the agency. With respect to Dustin, the magistrate continued the agency's motion for permanent custody for further hearing, pursuant to agreement between the parties. The trial court adopted the magistrate's decision in its entirety and found that, as to Julia, Rebecca and Hannah: (1) Lisa G. and Kevin G. had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside their home; (2) both parents had demonstrated a lack of commitment toward the children by failing to regularly support them or to fully utilize medical, psychiatric and other social and rehabilitative services made available since January 2000; (3) there are no relatives available who are suitable and willing to take custody of the children; (4) the children have a need for legally secure placement and that type of placement cannot be achieved absent a grant of permanent custody to the agency and (5) the agency had made reasonable efforts to allow the children to return to their home or the home of another parent or relative. The trial court further concluded that Julia, Rebecca and Hannah could not be placed with either parent within a reasonable period of time or should not be placed with their parents; that it is in the children's best interest to terminate parental rights and award permanent custody to the agency, and that the agency had made reasonable efforts to finalize a permanency plan for the children. The trial court found Lisa G.'s motion to return the children not well taken and denied same, and placed Julia, Rebecca and Hannah in the permanent custody of the agency.
{¶ 11} As to Dustin, pursuant to agreement of the parties, the trial court continued the agency's motion seeking permanent custody for further hearing to determine what is in his best interests jointly with the complaint for visitation and motion for custody filed by Dustin's father. Following further hearing on December 16, 2002, the trial court found that Lisa and Kevin G. had failed continuously and repeatedly to substantially remedy the conditions causing Dustin to be placed outside the home and that Lisa G. had demonstrated a lack of commitment toward Dustin by failing to regularly support him and by failing to fully utilize medical, psychiatric and other social and rehabilitative services made available since January 2000. The trial court further found that Dustin's natural father had voluntarily and knowingly withdrawn his motion for custody and consented to the agency's motion seeking permanent custody. Accordingly, the trial court awarded permanent custody of Dustin to the Sandusky County Department of Jobs Family Services.
{¶ 12} It is from the judgments set forth above that appellants appeal.
{¶ 13} In granting a motion for permanent custody, the trial court must find that there is clear and convincing evidence that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all relevant evidence, the court determines, by clear and convincing evidence, that one or more of those conditions exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to that case. Only if these findings are supported by clear and convincing evidence, can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996), 75 Ohio St.3d 95. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
{¶ 14} In her sole assignment of error, Mother asserts that, with regard to Rebecca, Hannah and Dustin, neither the magistrate nor the trial court considered the children's need for a legally secure permanent placement or whether that type of placement could be achieved without a grant of permanent custody as part of its determination of the child's best interest. Upon review of the record, however, this court finds that the particular facts of each child's situation were thoroughly considered by the magistrate and the trial court, particularly as they pertain to the child's best interest. The trial court considered voluminous evidence as to their relationships with their mother and with appellant Kevin G. and, in particular, appellants' demonstrated abilities to care for the children over the two years that the agency was involved. Accordingly, this court finds that the trial court did not err by granting the agency's motion for permanent custody as to Rebecca, Hannah and Dustin, and appellant Lisa G.'s sole assignment of error is not well taken.
{¶ 15} Appellant Kevin G. sets forth two assignments of error, which he argues together. As to his first assignment of error, appellant asserts that the agency did not show by clear and convincing evidence that an award of permanent custody was in Julia G.'s best interest. He argues that the trial court did not weigh all of the evidence before it. Additionally, he cites "overwhelming evidence" of his "close and enduring bond" with his children, his struggles to comply with the case plan and his commitment to visit with Julia despite dealing with "overwhelming barriers," a complex series of foster homes, animosity of caseworkers and miscommunications between the parents and therapists.
{¶ 16} This court has considered the entire record of proceedings in the trial court, including the transcript of the five-day hearing. The record also contains the report and recommendations of the children's court-appointed special advocate, who at the time of the report had worked with the family for over two years. This individual stated that both parents had failed to follow through with case plan services and had done little to ensure the return of their children to their home. She also stated that she had not visited appellants' home because they told her "in very colorful terms" that she was not welcome for any reason. She noted that the children were doing very well in their foster placements and seemed happy. She further stated that the children were all doing well in school. Caseworkers testified as to Kevin G.'s lack of progress on the case plan and his refusal to cooperate with case plan requirements, giving many examples. One caseworker testified that she had to be removed from the case after the children told her that their father had threatened to "put a bullet in [her] head." Another testified that Kevin G. had failed to complete the anger management class required by his case plan.
{¶ 17} As the trial court found, at the time of the hearing in July and August 2002, the children had been in the custody of the agency for 20 consecutive months. Pursuant to R.C. 2151.414(B)(1)(d), if a child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, the trial court is required only to inquire into what placement is in the best interests of the child. See In re Nice (2001), 141 Ohio App.3d 445. After considering the factors cited above as well as many other facts presented at the hearing, the trial court concluded that it was in Julia's best interest to terminate Kevin G.'s parental rights and award permanent custody to the agency. Based on the foregoing, this court finds that there was clear and convincing evidence that an award of permanent custody to the Sandusky County Department of Jobs Family Services was in Julia's best interest and, accordingly, Kevin G.'s first assignment of error is not well taken.
{¶ 18} In his second assignment of error, Kevin G. asserts that the trial court should not have adopted the magistrate's decision because the magistrate made erroneous findings of fact and failed to include in those findings relevant evidence. As to the magistrate's report, Civ.R. 53(E)(3)(a) requires that objections be filed within 14 days of the magistrate's decision. There is no evidence in the record, however, that Kevin G. filed objections to the September 13, 2002 magistrate's decision. Civ.R. 53(E)(3)(b) prohibits a party from "assigning as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Accordingly, appellant Kevin G.'s second assignment of error is not well taken.
{¶ 19} On consideration whereof, this court finds that substantial justice was done the parties complaining and the judgments of the Sandusky County Court of Common Pleas, Juvenile Division, are affirmed. Costs of this appeal are assessed to appellants.
 JUDGMENT AFFIRMED.
[1] By judgment entry dated March 26, 2003, this court consolidated the five appeals arising from judgments relating to the children for purposes of appeal under case No. S-02-031, pursuant to App.R. 3(B).