DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, James Graser, appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his three minor children and placed them in the permanent custody of Wayne County Children Services Board ("CSB"). We reverse and remand.
 I. {¶ 2} Graser is the natural father of three minor children, K.G., S.G., and T.G. The children initially entered CSB custody on December 13, 2001 when the family was evicted from its home. The children were adjudicated dependent on January 11, 2002. The children's mother later voluntarily surrendered her parental rights and is not a party to this appeal.
 {¶ 3} On November 13, 2002, CSB moved for permanent custody of the children. It alleged several grounds for permanent custody, including that the children had been in the temporary custody of CSB for more than 12 of the prior 22 consecutive months. See R.C. 2151.414(B)(1)(d). Following a hearing on the motion, the trial court granted the motion and placed all three children in the permanent custody of CSB. The trial court found, as its sole ground on the first prong of the permanent custody test, that the children had been in the temporary custody of CSB for more than 12 of the prior 22 months. The trial court made a factual finding that, at the time the permanent custody motion was filed, the children had not been in temporary custody for the requisite period. The trial court further found, however, that the statute was satisfied because the children had been in temporary custody for more than 12 months by the time of the permanent custody hearing.
 {¶ 4} Graser timely appealed, raising five assignments of error. We will address Graser's second assignment of error first because it is dispositive.
 II. Second Assignment of Error
"The award of permanent custody is unlawful because the juvenile court did not properly use the criteria for determining the children's best interests in R.C. 2151.414, nor did it properly use the criteria for permanent custody in R.C.2151.353."
 {¶ 5} Through his second assignment of error, Graser argues, among other things, that CSB had no authority to file a motion for permanent custody, alleging as its grounds that the children had been in its temporary custody for 12 of the past 22 months, because the children had been in temporary custody for only ten months at the time the motion was filed. [1] The appellee failed to file a brief in this case, and, therefore, offers no argument addressing its authority to file a motion for permanent custody on this basis before 12 months had elapsed.
 {¶ 6} In this case, as in most recent permanent custody cases appealed to this Court, CSB relied on R.C. 2151.414(B)(1)(d) to satisfy the first prong of the permanent custody test. That section provides that the first prong of the test is satisfied if the children have been in the temporary custody of the children services agency "for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C.2151.414(B)(1)(d). There is no dispute in this case, however, that at the time CSB filed the motion for permanent custody on this ground, the children had been in its temporary custody for only ten months.
 {¶ 7} This case presents an issue of first impression for this Court: whether a children services agency has authority to file a motion for permanent custody that alleges the so-called "12 of 22" grounds before the children have been in the temporary custody of the agency for a full 12 months. For the reasons that follow, we hold that the agency lacks authority to file for permanent custody on this basis until the children have been in its temporary custody for a full 12 months.
 {¶ 8} The statutory language on this issue is unclear. The so-called "12 of 22" ground for permanent custody is set forth in the permanent custody statute, R.C. 2151.414. R.C.2151.414(B)(1)(d) provides:
"[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * * [t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 9} R.C. 2151.414(B)(1)(d) clearly specifies when the period of "temporary custody" begins:
"For the purposes of * * * this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 10} R.C. 2151.414 fails to indicate, however, when the court should stop counting the months of "temporary custody" for purposes of this provision or when the agency is authorized to file its motion on this ground.
 {¶ 11} R.C. 2151.413(D)(1) provides that the agency "shall" file a motion for permanent custody after a child has been in its temporary custody for more than 12 months of the prior 22-month period if the child is still in temporary custody (and there has been no documentation by the agency of a compelling reason that permanent custody is not in the child's best interest and there has been no finding by the court that the agency failed to use reasonable efforts to reunify). R.C. 2151.413(A) further provides, however, that the agency "may" file a motion for permanent custody any time after it is granted temporary custody of a child who is not abandoned or orphaned. That provision might presumably apply only to other permanent custody grounds, but it includes no such limiting language.
 {¶ 12} Because the permanent custody grounds are stated in terms of what the trial court must find at the permanent custody hearing, the courts tend to focus on the facts as they existed at the time of the hearing. If the ground is "12 of 22," the court must make that finding at the hearing and appellate courts, including this one, tend to count the time that a child spends in temporary custody up to the date of the hearing. See, e.g., Inre B.B. and B.B., 9th Dist. No. 21447, 2003-Ohio-3314, at ¶ 10;In re Julia G., 6th Dist. Nos. S-02-031, S-02-033, S-02-034, and S-03-005, 2003-Ohio-6196, at ¶ 17.
 {¶ 13} The Ohio Revised Code does not explicitly address whether an agency "may" file a permanent custody motion on the basis of the "12 of 22" ground prior to the end of the 12-month period. One appellate court concluded that, due to the permanent custody statute's focus on the time of the hearing, a motion filed prior to the expiration of 12 months will not affect the trial court's authority to grant permanent custody on the "12 of 22" ground as long as the child has been in the agency's temporary custody for 12 months by the time of the permanent custody hearing. In re Dyal (Aug. 9, 2001), 4th Dist. No. 01CA12. This court disagrees with that interpretation. It is fundamental that a motion for permanent custody must allege grounds that currently exist.
 {¶ 14} R.C. 2151.413 and 2151.414, construed together, are at best ambiguous on this issue. Given the ambiguity, we must look to the legislative intent behind the permanent custody statutes and the addition of the "12 of 22" ground for permanent custody. See State v. Jordan (2000), 89 Ohio St.3d 488, 492.
 {¶ 15} We are guided by the rules of statutory construction to arrive at the legislature's intent. Symmes Twp. Bd. ofTrustees v. Smyth (2000), 87 Ohio St.3d 549, 553. R.C. 1.49
provides that,
"[i]f a statute is ambiguous, the court, in determining the intention of the legislature, may consider * * * [t]he object sought to be attained[,] [t]he circumstances under which the statute was enacted[,] [t]he legislative history[,] [t]he common law or former statutory provisions * * * [,] [t]he consequences of a particular construction[, and] [t]he administrative construction of the statute."
 {¶ 16} In 1997, in response to concerns that over 500,000 children were in foster care nationally and that children in foster care typically remained in the foster care system for years, the Adoption and Safe Families Act was signed into law. See Moye and Rinker, It's a Hard Knock Life: Does the Adoption and Safe Families Act of 1997 Adequately Address Problems in the Child Welfare System? (2002), 39 Harv. J. on Legis. 375; Gendell, In Search of Permanency: A Reflection on the First 3 Years of the Adoption and Safe Families Act Implementation (2001), 39 Fam. C. Rev. 25. One of the most controversial aspects of the Act was its requirement that states set shorter time frames for permanency hearings, thereby limiting the time that parents could work toward reunification, so that children would not languish in the system for extended periods of time. Id.
 {¶ 17} In apparent response to the federal act, as well as prior federal legislation, the Ohio General Assembly amended its permanent custody statutes to incorporate such shorter time frames. In 1996, the Ohio General Assembly amended R.C. 2151.413
to remove its requirement that children services agencies wait six months before filing for permanent custody. Prior to the amendment, in most situations, children services agencies were required to wait at least six months after children were placed in their temporary custody before filing for permanent custody. Emphasizing that parents have a basic civil right to raise their children and that termination of parental rights is "`the family law equivalent of the death penalty[,]'" the Ohio Supreme Court stressed that the "logical purpose for the six-month delay imposed upon a children services agency is to give parents an adequate opportunity to rectify the problems which initially forced the child into temporary custody." In re Hayes (1997),79 Ohio St.3d 46, 48, quoting In re Smith (1991),77 Ohio App.3d 1, 16. The legislature's 1996 removal of the six-month filing delay period predated the "12 of 22" provision by several years. It was not coupled with any expressed or demonstrated intent that parents no longer be given an opportunity to rectify their problems. Instead, it meant that the agency no longer had to wait six months before alleging that "the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" based on one of the specific grounds set forth in R.C. 2151.414(E).
 {¶ 18} The March 1999 addition of the "12 of 22" provision in R.C. 2151.414(B)(1)(d) was a significant change to the permanent custody statute. Under the pre-1999 version of R.C. 2151.414(B), an agency was required to establish, as to a child who was not abandoned or orphaned, the following two prongs of the permanent custody test: (1) that the child could not or should not be placed with his parents within a reasonable time, and (2) that permanent custody is in the child's best interest. With the addition of the "12 of 22" provision, children services agencies are no longer required to prove that the child cannot be returned home as long as the requisite period of temporary custody has passed. In re Evans (Oct. 30, 2001), 3rd Dist. No. 1-01-75.
 {¶ 19} Although the object sought to be attained by the "12 of 22" amendment to R.C. 2151.413 and R.C. 2151.414(B) was to limit the time children spend in foster care, the apparent intent was that, where no other grounds for permanent custody exist, the parents be given the full 12 months to work toward reunification. The current statutory scheme still emphasizes the importance of preserving the family unit and reuniting the child with his natural parents if that can be done in a timely manner. Case plans continue to be required in most cases and are to have as one of their general goals the elimination of the need for out-of-home placement so the child can safely return home. See R.C. 2151.412(F)(1)(b).
 {¶ 20} As another court stressed in finding that the "12 of 22" provision adequately protected a parent's constitutional rights,[2] "[p]rior to instituting a permanent custody proceeding under R.C. 2151.414(B)(1)(d), the parent has twelve months to demonstrate that the parent is able, suitable, or fit to care for the child." In re Workman, 4th Dist. No. 02CA574, 2003-Ohio-2220, at ¶ 40.
 {¶ 21} It would seem that if a presumption that a parent is unfit might arise due to the passage of a child's time in temporary custody, parents should be given that full period of time to work toward reunification. A time period of 12 months has been set by the legislature and it should not be within the power of children services agencies or the courts to decide that the 12-month period can be shortened in certain cases. If another ground for permanent custody exists, the agency should pursue that ground and be required to prove it by clear and convincing evidence.
 {¶ 22} In this case, CSB apparently believed that it was permitted to file for permanent custody on this ground before the children had been in its temporary custody for 12 months because 12 months would have elapsed by the time of the permanent custody hearing.[3] Allowing agencies to file premature motions might further the goal of moving children through the system more quickly, but such a construction of the permanent custody statutes could completely undermine the concurrent goal of preserving the family unit when possible.
 {¶ 23} The records in most of the recent cases appealed to this Court have revealed that permanent custody hearings are often not held until many months after the agency filed the motion. Allowing the agency to benefit from these delays at the expense of the parent cannot have been intended by the legislature, as lengthy delays were not within the intent of the legislature when it shortened the permanent custody time frames.
 {¶ 24} R.C. 2151.414 clearly evinces an intent that the hearing be held shortly after the motion for permanent custody is filed. R.C. 2151.414(A)(1) provides that the court shall schedule a hearing "[u]pon the filing of a motion[.]" R.C. 2151.414(A)(2) further provides that the hearing shall be held within 120 days of the filing of the motion or within a reasonable additional time if good cause is shown.
 {¶ 25} R.C. 2151.414(A)(2) also recognizes the possibility that timely hearings will not occur, however, and provides that "[t]he failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court."
 {¶ 26} Even though the trial court will ultimately decide at a hearing, which may not be held for several months, whether the child has been in temporary custody of the agency for more than 12 of the prior 22 months, there is nothing in the legislative history to suggest any intention that the agency be permitted to cease its efforts toward reunifying the family and file its motion for permanent custody two, three, or even more months before the 12-month period has elapsed.
 {¶ 27} In this case, CSB filed only two months early but, if we were to conclude that early filing is permissible, it would become a slippery slope. The permanent custody hearing in this case was not held until nine months after the motion was filed. If early filing were permissible, an agency could feasibly file its motion for permanent custody on the "12 of 22" ground after a child had been in its temporary custody for only one or two months, and then wait for several months of delays. Rather than receiving 12 months of reasonable efforts by the agency to reunite the family, a parent's opportunity to work toward reunification could be reduced to a few short months. Such a result could not have been the intent of the legislature in enacting the "12 of 22" ground for permanent custody.
 {¶ 28} Moreover, statutes must be construed according to common usage and, in enacting the statutes, it is presumed that a just and reasonable result was intended. R.C. 1.42; R.C. 1.47. As this Court indicated above, the agency cannot base its motion for permanent custody on grounds that do not yet exist. Juv.R. 19 provides that a motion "shall state with particularity the grounds upon which it is made[.]" Implicit in that requirement is that the grounds alleged are grounds that presently exist and are based on facts that have already occurred. Although CSB stated specific grounds, those grounds were based on facts that had not yet occurred.
 {¶ 29} In its motion for permanent custody, CSB alleged that the children had been in its temporary custody for more than 12 of the prior 22 months, but, the very facts alleged in the motion indicated that the children had been in temporary custody for only ten months. The trial court specifically found that the children had not been in temporary custody for 12 months at the time CSB filed the motion for permanent custody. CSB had no authority to move for permanent custody, alleging 12 months of temporary custody, until those facts had actually occurred. To hold otherwise would be contrary to common sense and would certainly achieve an unjust result.
 {¶ 30} Graser's first assignment of error is sustained insofar as it contends that the agency had no authority to file the motion that alleged the "12 of 22" grounds for permanent custody because those grounds did not yet exist.
 First Assignment of Error
"The award of permanent custody is unlawful because the juvenile court did not comply with the requirements of R.C.2151.353 and R.C. 2151.419."
 Third Assignment of Error
"The juvenile court erred in finding that appellant/father had failed to comply with certain case plan requirements filed contemporaneously with the motion for permanent custody and never made part of the case plan by order of the court, unless it was proved that appellant/father had notice of the changes and was asked for his prior consent to them; and the court further erred in not addressing the issue raised by the motion for extension of protective custody."
 Fourth Assignment of Error
"The juvenile court erred by finding that there was clear and convincing evidence sufficient to terminate the parental rights of james graser as to all three children, or as to the children considered singly."
 Fifth Assignment of Error
"James Graser did not receive effective assistance of counsel, in violation of his rights under R.C. 2151.352, with reference to U.S. const. amend. vi and xiv."
 {¶ 31} Because we are reversing the judgment of the trial court on other grounds, these assigned errors have been rendered moot and will not be addressed. See App.R. 12(A)(1)(c).
 III. {¶ 32} Graser's second assignment of error is sustained insofar as it contends that CSB had no authority to file a motion for permanent custody alleging that the children had been in temporary custody for more than 12 of the prior 22 months because 12 months had not yet elapsed. The judgment is reversed and remanded on that basis. The remaining assignments of error are moot and are not addressed.
Judgment reversed and cause remanded.
Whitmore, P. J. Baird, J. concur.
[1] CSB was also required to allege and establish the second prong of the test, that permanent custody was in the children's best interests. See R.C. 2151.414(B). Because this issue pertains to the first prong of the test, however, the best interest prong will not be discussed in any detail.
[2] Because Graser raised no challenge to the constitutionality of R.C. 2151.414(B) (1(d), this Court does not reach that issue.
[3] Again, this Court notes that CSB filed no brief in this case so this Court can only speculate as to CSB's legal position on this significant issue.