[Cite as *In re A.J.P.-H.*, 2017-Ohio-5515.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO


| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| A.J.P.-H., T.M.P.-H., AND L.M.P.-H., DEPENDENT CHILDREN | : | **CASE NOS. 2017-L-019** |
| | : | **2017-L-020** |
| | | **2017-L-021** |
| | : | |


Civil Appeals from the Lake County Court of Common Pleas, Juvenile Division, Case Nos. 2014 DP 01744, 2016 NG 01560, and 2016 NG 01561.

Judgment: Affirmed.


*Judith M. Kowalski,* 333 Babbitt Road, #323, Euclid, OH 44123 (For Appellant-Mother, Angela Perfetti).

*Charles E. Coulson,* Lake County Prosecutor, *Teri R. Daniel,* Assistant Prosecutor, and *Jason R. Shachner,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee, Lake County Department of Job and Family Services).


DIANE V. GRENDELL, J.

{¶1}    Appellant, Angela Perfetti, appeals from the judgment of the Lake County Court of Common Pleas, Juvenile Division, granting permanent custody of her children, A.J.P.-H., T.M.P.-H., and L.M.P.-H., to appellee, the Lake County Department of Job and Family Services (LCDJFS).  The issues to be determined in this case are whether R.C. 2151.414(B)(1)(d) is unconstitutional for allowing the termination of parental rights after children's services has temporary custody for an "arbitrary" period of time and whether the trial court erred in finding it was in the best interest of the children to grant

permanent custody to LCDJFS when their mother had relapsed in her drug use, had been recently released from a community based corrections facility, and did not have housing for the children or employment. For the following reasons, we affirm the decision of the court below.

**{¶2}** Perfetti is the biological mother of L.M.P.-H., born July 15, 2006, T.M.P.-H, born February 27, 2008, and A.J.P.-H., born May 13, 2013. Their biological father is Thomas Halutick.

**{¶3}** On September 30, 2014, a Complaint was filed alleging A.J.P.-H. to be a dependent child given her father's incarceration and her mother's arrest. On the same date LCDJFS filed a Motion for Emergency Temporary Custody of all three children based on these circumstances.[1] This Motion was granted by the court.

**{¶4}** On November 5, 2014, a Magistrate's Order was issued adjudicating A.J.P.-H. dependant, which was subsequently adopted by the trial court.

**{¶5}** LCDJFS filed a Motion to Extend Temporary Custody on August 17, 2015, noting some progress on the case goals, which the court granted.

**{¶6}** On November 30, 2015, a Motion to Terminate Temporary Custody and for Protective Supervision was filed, again noting positive progress by the parents. Following a Review Hearing on December 17, 2015, this Motion was dismissed.

**{¶7}** A second Motion to Extend Temporary Custody was filed on February 3, 2016, and was granted by the court.

**{¶8}** On July 21, 2016, LCDJFS filed a Motion for Permanent Custody.

---

1. According to trial testimony, L.M.P.-H. and T.M.P.-H. had been placed under LCDJFS' protective supervision beginning in January 2013, although documents relating to these prior proceedings are not part of the record before this court since the cases were subsequently refiled.

{¶9} On October 20, 2016, LCDJFS filed Complaints alleging T.M.P.-H. and L.M.P.-H. were neglected and dependent, based upon the Halutick's incarceration and Perfetti's entry into NEOCAP, a community based corrections facility. On the same date, a Motion for Emergency Temporary Custody was filed. This Motion was granted.

{¶10} On November 23, 2016, a Motion for Permanent Custody of L.M.P.-H. and T.M.P.-H. was filed. It noted that their cases had been dismissed and refiled on October 20, 2016, and that the two children had been in the custody of LCDJFS since September 30, 2014, "with the exception of a brief moment on October 20, 2016."

{¶11} The Guardian Ad Litem filed an October 18, 2016 Report and a December 16, 2016 Supplemental Report. He visited the foster care placement and noted that the "children appear well cared for and happy." He recommended that permanent custody be granted to LCDJFS, emphasizing that the parents have had almost four years to remedy their drug addiction, their consistent periods of incarceration, and his belief that it is unlikely they would be in a position to care for the children in the near future.

{¶12} A hearing on the Motion for Permanent Custody was held on December 21, 2016. The following testimony was presented:

{¶13} Nicole Corbett, a supervisor at LCDJFS, was assigned to the family's case in 2012. Corbett testified that, pursuant to the initial referral on September 24, 2012, Halutick had overdosed on heroin and T.M.P.-H. and L.M.P.-H. had found him passed out. The original case plan required that Halutick complete mental health and drug and alcohol assessments. At that time, LCDJFS had protective supervision and the children remained in the parents' home.

3

**{¶14}** In May of 2013, Perfetti gave birth to A.J.P.-H., both tested positive for opiates, and A.J.P.-H. remained in the hospital for approximately a month. A case plan goal was added for Perfetti to complete a chemical dependency assessment, which she did. According to Corbett, Perfetti stated that she had taken Percocet from an "old prescription" before child birth due to back pain. Perfetti admitted that she had taken about 10 Percocet in the month or so before A.J.P.-H.'s birth.

**{¶15}** Anna Kessler, a social worker at Rainbow Babies and Children's Hospital, testified that A.J.P.-H. was transferred to Rainbow in May 2013 at about four or five days old due to medical issues, including narcotic withdrawal and a positive toxicology screen.

**{¶16}** Jane Lewis, a dual diagnosis counselor at Signature Health, performed an assessment of Thomas Halutick in June 2013 and referred him to a Suboxone treatment program for opiate dependency. He admitted to using heroin for over a year after he became addicted to pain pills following an injury. He did not return for follow-up and treatment services.

**{¶17}** Lauren Dickinson, an ongoing social worker with LCDJFS, worked on the family's case from November 2013 to June 2015. Perfetti had met the goal to have a drug and alcohol assessment in 2013, although the plan was later modified to include additional goals. Halutick was removed from the case plan from August 2014 to May 2015 due to his incarceration. He testified positive for opiates between March and June of 2015.

**{¶18}** In September 2014, LCDJFS filed for emergency custody of the children because Halutick was incarcerated and Perfetti was arrested for failure to appear in

relation to a drug possession charge. Perfetti was released from jail in November 2014. After Perfetti's release from jail, she was "extremely consistent with visitation."

{¶19} Dawn Argie, a social worker and chemical dependency counselor at Lake Geauga Recovery Centers, worked with Perfetti in an opiate recovery program, to which she was referred through the Lake County Court of Common Pleas beginning in December 2014. The program is used to avoid incarceration if a defendant is compliant with its terms, which include approximately a year of treatment and receiving monthly injections of Vivitrol, an opiate blocker. Perfetti completed the outpatient treatment and aftercare and provided negative drug screens. She missed a few appointments in the last phase, individual counseling, but was discharged successfully around October of 2015, with a finding of "goals partially met."

{¶20} Muneera Yates, an ongoing social worker at LCDJFS, was assigned the family's case in October 2015. Halutick had completed the parent education goal and a drug and alcohol program. Halutick was non-compliant with requests for drug screens between November 2015 and April 2016 and was inconsistent with visitation. In July 2016, he was arrested for theft charges and would be incarcerated until April 2018.

{¶21} Yates testified that Perfetti had a case plan goal to complete a drug and alcohol assessment and follow recommendations. She participated in a program at Lake Geauga Recovery Centers in relation to that goal. In November and December 2015 she was asked to take drug screens, which were both negative. Seven other requested drug tests were not completed. Yates was aware that Perfetti was tested by her probation officer and those screens did not come back positive. She also completed a screen in December of 2016 which was negative.

5

{¶22} When Yates received the case, the parents had overnight visitation with the children, which transitioned into weekend visitation, due to their progress on the case plan. In February 2016, this visitation was "pulled back" due to their failure to complete drug screens and concerns with housing. They were evicted from their house around the time she received the case, lived in a hotel briefly, moved to another house, were "possibly evicted," and then moved to another home. Yates testified that Perfetti was permitted to set up visitation with the children's foster parent but Perfetti "felt it was an inconvenience to have him supervise the contact." Perfetti did have phone calls with the children and had written letters.

{¶23} Perfetti was incarcerated in March 2016 in relation to a domestic violence incident, which led to a probation violation. She had a positive drug screen for opiates in March. While in jail, Perfetti was charged with Tampering with Drugs and Possession of a Controlled Substance for having Suboxone. Lake County Sheriff's Office Detective Gerald Infalvi testified that Perfetti admitted she obtained Suboxone from another inmate and concealed it in a Kool-Aid packet. Perfetti ultimately pled guilty to Possession of a Controlled Substance, a misdemeanor of the first degree.

{¶24} According to Yates, after Perfetti was released from NEOCAP in November 2016, she stated she was receiving anger management treatment, medication management services, and getting counseling. Perfetti subsequently refused a home visit request.

{¶25} The children have been visiting with a potential adoptive family on the weekends since November 2016. Yates testified that they had been in two foster homes while in LCDJFS' custody.

6

**{¶26}** Amber Blackston-Balogh, an outpatient therapist at Crossroads, has treated T.M.P.-H. since March 2015. He was diagnosed with adjustment disorder and post-traumatic stress disorder. This related to traumas such as the arrest of his father, separation from his parents, and witnessing an overdose. He struggles with trusting adults and engages in "acting out" behaviors, such as becoming aggressive or not listening, to maintain control. Due to this, he needs caregivers who can provide a stable and predictable environment. Blackston-Balogh also worked with Perfetti from May 2015 to February 2016, at which time she stopped attending. At this point, Blackston-Balogh recommended that visitation with Perfetti not continue because T.M.P.-H. was not stable, and she believed it would reinforce a pattern of instability.

**{¶27}** On Perfetti's behalf, her adult daughter, Kali Perfetti, testified that she has a close relationship with her three siblings and visits them when she is home from college. She testified that her mother raised her, they are close, and she is caring. She had not seen her mother or stepfather use drugs in the home. She speaks with her mom on an almost daily basis.

**{¶28}** Donna Perfetti, Perfetti's mother, testified that Perfetti is currently living with her and has lived there since her release from NEOCAP. Donna rents a room in a friend's house and the children could visit but would not be allowed to live there. If Perfetti was given custody, Donna would move into an apartment with her and help out, although she is physically unable to care for the kids on her own.

**{¶29}** Perfetti, a former nurse at Cleveland Clinic, testified that she raised Kali primarily on her own. Before A.J.P.-H. was born, Perfetti had surgery for diverticulosis and had been prescribed Percocet. Prior to A.J.P.-H.'s birth, she used Percocet for

7

back pain, although it was not prescribed for that purpose. Around the summer of 2013, when she was no longer prescribed Percocet, she became sick and began using heroin. She was arrested in September 2014 for possession of heroin and was incarcerated for approximately two months.

{¶30} Perfetti provided various reasons for the missed drug screens, including not receiving written notices placed on her door and her lack of a driver's license, which was required to complete a screen. She testified that she was completing her bi-weekly screens while on probation.

{¶31} In relation to the domestic violence incident in 2016, she testified that she had been drinking and subsequently pled guilty to disorderly conduct. This resulted in a probation violation and her placement in NECOAP. She contended that a positive drug test after her domestic violence arrest was a result of taking Vicodin she had been prescribed due to dental work.

{¶32} After her release from NEOCAP in November 2016, approximately seven weeks before the custody hearing, she obtained a driver's license, applied for jobs, and began "working on" getting back her nursing license. She would not be able to obtain her nursing license for at least two years. She has not been permitted to visit the children since her release from NEOCAP, but she did send e-mails to L.M.P.-H. and has talked to the children on the phone and sent letters while in NEOCAP. Perfetti was willing to go to counseling with her children as well as find adequate housing.

{¶33} On December 28, 2016, the trial court issued Judgment Entries granting permanent custody of the children to LCDJFS. The court found that the children had been in the custody of children's services for twelve or more months of a consecutive

8

twenty-two month period, and that reasonable efforts were made to return the children to their home. It also found that, by clear and convincing evidence, it was in the children's best interest for custody to be granted to LCDJFS. In reaching its decision, the court outlined each of the best interest factors pursuant to R.C. 2151.414(D)(1)(a)-(e).

**{¶34}** Perfetti timely appeals and raises the following assignments of error:

**{¶35}** "[1.] Ohio Revised Code Section 2151.414(B)(1)(d) on its face and as applied violates the parents' constitutional rights to due process.

**{¶36}** "[2.] The juvenile court abused its discretion in determining that clear and convincing evidence supports its decision to award permanent custody to the Lake Department of Job and Family Services.

**{¶37}** "[3.] The decision to award permanent custody was against the manifest weight of the evidence.

**{¶38}** "[4.] The trial court abused its discretion in finding the award of permanent custody was in the best interest of the child."

**{¶39}** In her first assignment of error, Perfetti argues that the requirement in R.C. 2151.414(B)(1)(d) allowing a grant of permanent custody when the children have been in the temporary custody of children services for 12 or more months of a consecutive 22 month period is arbitrary and violates her due process, since it allows "for a parent's rights to be terminated without even showing that he or she is unfit."

**{¶40}** This issue was not raised below. The Ohio Supreme Court has held that the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such

9

issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. As this court has explained, "[t]he waiver doctrine embodied by *Awan* is discretionary." *State v. Schlee*, 11th Dist. Lake No. 98-L-187, 1999 WL 1313651, 10 (Dec. 17, 1999), citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. "Even where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *M.D.* at syllabus.

**{¶41}** In reviewing the merits of the constitutional claim raised by Perfetti, we find that her argument has previously been rejected by this court and no plain error occurred.

**{¶42}** R.C. 2151.414(B)(1)(d) allows for a grant of permanent custody in favor of children's services if it is in the best interest of the child and where "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *." This court has held that "[R.C.] 2151.414(B)(1)(d) does not create an unjustified presumption of parental unfitness." *In re A.J.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶ 43; *In re Stillman*, 155 Ohio App.3d 333, 2003-Ohio-6228, 801 N.E.2d 475, ¶ 56 (11th Dist.) (the twelve/twenty-two criterion provides a parent with ample opportunity to demonstrate his or her parenting fitness). "Contrary to appellant's assertion, we believe that inherent within R.C. 2151.414(B)(1)(d) rests the finding that the parent is unable, unsuitable, or unfit to care for the child. If the child has been placed in a children services agency's temporary custody for at least twelve months of

the prior twenty-two months, some reason must exist why the child has not been in the parent's care. The reason normally would be because the parent has been unable to demonstrate that the parent is able, suitable, or fit to care for the child." *A.J.* at ¶ 42, citing *In re Workman,* 4th Dist. Vinson No. 02CA574, 2003-Ohio-2220, ¶ 39.

**{¶43}** Perfetti contends that the application of the time limit overlooks progress made on the case plan, emphasizing the amount of time that it takes to overcome a drug addiction. However, the court analyzed all of the circumstances represented at the hearing in reaching its conclusion, including testimony relating to her progress, which will be addressed more specifically below.

**{¶44}** Perfetti also contends that the time limit of "twelve/twenty two" is arbitrary, but this argument has similarly been rejected by this court, on the grounds of standing, given that the court did not grant permanent custody solely on this ground but also after a full consideration of the best interest factors. *Id.* at ¶ 48-49. On this basis, this argument also lacks merit.

**{¶45}** Finally, to the extent that Perfetti points out that LCDJFS voluntarily dismissed and refiled complaints relating to two of her children only two months before the grant of permanent custody, she provides no argument as to how this relates to the constitutionality of the pertinent statute or would warrant reversal.

**{¶46}** The first assignment of error is without merit.

**{¶47}** Because the remaining three assignments of error are all related to the court's application of the facts to the proper test for terminating parental rights, they will be considered jointly.

11

{¶48} "[P]arents who are suitable persons have a 'paramount' right to the custody of their minor children." (Citations omitted.) *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). The "extreme disposition" of permanently terminating a parent's rights with respect to a child, however, "is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re Cunningham,* 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979). "[T]he [f]undamental or [p]rimary inquiry at the dispositional phase of these juvenile proceedings is not whether the parents * * * are either fit or unfit," rather, it is "the best interests and welfare of that child [that] are of paramount importance." *Id.* at 106.

{¶49} A trial court must apply R.C. 2151.414(B)'s two-prong analysis to determine the outcome of a motion for permanent custody. First, the juvenile court must determine, by clear and convincing evidence, that one of the following pertinent circumstances applies: "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents"; the child is abandoned; the child is orphaned; the child has "been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period"; or the child has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e).

{¶50} If the court determines that one of the circumstances under R.C. 2151.414(B)(1) is present, the court proceeds to a determination of the second prong, in which it considers whether the award of permanent custody to the agency is in the best interest of the child pursuant to R.C. 2151.414(D).

{¶51} "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, * * * [t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; * * * [t]he wishes of the child * * *; [t]he custodial history of the child * * *; [t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency"; and whether any relevant factors in (E)(7) to (11) of this section apply. R.C. 2151.414(D)(1)(a)-(e).

{¶52} In her second assignment of error, Perfetti argues that the court erred in determining permanent custody was supported by clear and convincing evidence, citing R.C. 2151.414(E).

{¶53} The trial court was not required to make a finding regarding whether the children could be returned to Perfetti in a reasonable period of time or consider the factors under R.C. 2151.414(E) and it did not make such a finding. *See* R.C. 2151.414(E) (if the court determines that one of the listed factors under R.C. 2151.414(E) applies, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent"). "'When an agency seeks permanent custody pursuant to R.C. 2151.414(B)(1)(d),' based on the fact that the child has been in the custody of a children's services agency for longer than 12 months of a 22 month consecutive period, as occurred in the present case, 'the court need not find that the child cannot or should not be placed with either parent within a reasonable time as required by R.C. 2151.414(B)(1)(a). The only consideration is the best interest of the child.'" *In re B.R.C.,* 11th Dist. Portage Nos.

2013-P-0059 and 2013-P-0060, 2014-Ohio-69, ¶ 54, citing *In re Thompson,* 11th Dist. Portage Nos. 2004-P-0023 and 2004-P-0024, 2004-Ohio-3686, ¶ 34; *In re Janson,* 11th Dist. Geauga No. 2005-G-2656, 2005-Ohio-6712, ¶ 37-38 (the trial court is "not required to consider the R.C. 2151.414(E) factors" when its finding under R.C. 2151.414(B)(1)(d) is supported by clear and convincing evidence).

{¶54} Here, the court found that, under R.C. 2151.414(B)(1)(d), the children had been in the custody of children's services for at least 12 of the last 22 months. In fact, the children had continuously been in the custody of children's services since September of 2014 (with a very brief interruption for L.M.P.-H. and T.M.P.-H.). Perfetti does not point to evidence to the contrary. Thus, the remaining consideration is whether it was proven, by clear and convincing evidence, that the custody decision was in the best interest of the children.

{¶55} In her third and fourth assignments of error, and to some extent in her second assignment of error, Perfetti raises arguments regarding the best interest of the children, contending that the court's finding was against the weight of the evidence, that clear and convincing evidence was lacking, and that the best interest finding was an abuse of discretion.

{¶56} Provided that the first prong is met, as discussed above, the juvenile court may grant permanent custody to children's services "only if it determines, by clear and convincing evidence, that it is in the best interest of the child." *In re Krems*, 11th Dist. Geauga No. 2003-G-2535, 2004-Ohio-2449, ¶ 36. The Ohio Supreme Court "has defined clear and convincing evidence as 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such

14

certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶57}** Further, when reviewing the weight of the evidence, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶58}** Here, the trial court determined, by clear and convincing evidence, that a grant of permanent custody was in the best interest of the children, examining each of the R.C. 2151.414(D)(1) best interest factors. This decision was not against the weight of the evidence or otherwise made in error.

**{¶59}** As to the first best interest factor, the court was required to consider the relationship of the children and the parents, as well as their relatives. R.C. 2151.414(D)(1)(a). As to this factor, the court concluded that there was a lack of recent visitation, emphasizing Perfetti's incarceration, and noted that they are currently in a safe environment.

**{¶60}** Perfetti contends that she was consistent with her visitation with the children until she was not permitted to see them following her release from NEOCAP, that she had been a good mother to her adult child, Kali, and that she and Kali have a good relationship with the children as well. There is no question that Perfetti cares about her children and that she has had a good relationship with them. This is only one factor to consider, as the court must weigh all of the factors, and cannot give one "greater weight than the others pursuant to the statute." *In re Schaefer,* 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. There are also legitimate concerns about Perfetti's incarceration and criminal activities over the period of time preceding the permanent custody hearing. While some of Perfetti's inability to visit with the children was a result of this incarceration, it does not change the fact that it limited her ability to interact with the children and that the court accurately portrayed the facts as to this issue.

**{¶61}** In relation to the wishes of the children, A.J.P.-H. was too young to express such wishes, but L.M.P.-H. expressed in her in camera interview a desire that permanent custody be granted while T.M.P.-H. stated a desire to live with his mother. It is noteworthy here that the guardian ad litem recommended permanent custody be granted to LCDJFS with respect to all three children. The trial court clearly stated that it had considered the children's wishes in reaching its decision. Given the concerns expressed by several witnesses, and the guardian ad litem's belief that Perfetti is incapable of caring for the children at any time in the near future given her problems with drug addiction, it cannot be said T.M.P.-H.'s wishes should override these concerns.

16

{¶62} As to the next factor, "the custodial history of the children," as discussed above, they remained in the custody of children's services for well over the 12-of-22 month time period required to grant permanent custody.

{¶63} The court also considered the need for a legally secure placement, emphasizing both parents' continued criminal offenses that placed the children in danger.

{¶64} There is no question that there was a legitimate concern regarding a secure placement supported by the evidence in the record. After complying with case plan goals at the end of 2015 and being granted additional visitation, in March of 2016, Perfetti was arrested for domestic violence, while intoxicated, resulting in a probation violation. While in jail, she was found in possession of a controlled substance, and was subsequently placed in NEOCAP. She was released less than two months before the hearing on the permanent custody motion. Halutick also had similar problems with incarceration and is not scheduled to be released from prison until April of 2018. Throughout the several years during which LCDJFS has been involved with the family, there have been periods of compliance with the case plan, followed by arrests, noncompliance with drug screens, and Perfetti's subsequent relapse.

{¶65} The particular need for a secure placement for T.M.P.-H. is also underscored by the testimony of his therapist, Blackston-Balogh, that he was diagnosed with adjustment disorder and post-traumatic stress disorder relating to traumas from his parents' activities. She explained that, because of these problems, he needs caregivers who can provide a stable and predictable environment. The testimony of the witnesses indicated that this would not be the case if he were to return to Perfetti's custody.

17

**{¶66}** Perfetti emphasizes that she had completed several case plan objectives, including drug treatment and she generally had negative drug screens.

**{¶67}** While this may be accurate, "the parents' progress is measured in part by their completion of the case plan goals," but "the case plan is not the only measure by which a court determines whether to grant a motion for permanent custody." *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 103. The major concern expressed was not that Perfetti never attempted to comply with the case plan or did not complete some of its objectives, but that she had relapsed by using drugs, was arrested, and had only been out of NEOCAP for less than two months before the permanent custody hearing. Prior compliance with the case plan does not negate these facts. The record demonstrates several periods of compliance, interlaced with arrests and alcohol or drug use, raising concerns of possible future relapse. Given the past circumstances and facts of this case, it is difficult to say a legally secure placement could be achieved if permanent custody is not granted.

**{¶68}** To the extent that Perfetti contends she can now provide a more stable environment since she has received treatment, been released from NEOCAP, is living with her mother, and has obtained her driver's license, concerns about stability remain. The testimony presented by Perfetti's witnesses establishes that she does not currently have housing available for the children, nor does she have a job. Testimony established that Perfetti had difficulty maintaining stable housing in the past. Although Perfetti believes she can provide a stable environment for the children, this is speculative and, again, has not been accomplished over the more than two-year period that they were not in her custody, a factor which weighs in favor of the trial court's best

18

interest determination. *See B.R.C.,* 2014-Ohio-69, at ¶ 49, citing *In re N.A.P.,* 5th Dist. Washington Nos. 12CA30 and 12CA31, 2013-Ohio-689, ¶ 40 (the appellant's contention that he would obtain secure housing upon his release from a correctional facility was "unproven and speculative," especially given past housing concerns); *In re T.F.,* 11th Dist. Ashtabula No. 2009-A-0039, 2010-Ohio-590, ¶ 57.

{¶69} Perfetti points to her accomplishments before her drug use, such as her career as a nurse, and explains that her drug problem arose from her use of prescription pain killers. This cannot override the best interest of the children and the need for stability under the present circumstances, which are of "paramount" concern. *Cunningham,* 59 Ohio St.2d at 106, 391 N.E.2d 1034.

{¶70} Finally, under R.C. 2151.414(D)(1)(e), which requires consideration of the factors under (E)(7)-(11), the court notes that Perfetti had not visited with the children since February 2016. This is an accurate statement. As this was based on circumstances such as her incarceration and later concerns about how her visitation would impact the children, especially T.M.P.-H., it was a valid factor for the court to weigh in its analysis.

{¶71} When reviewing each of the factors considered by the lower court and the evidence as a whole, its decision was supported by clear and convincing evidence and its determination was not against the weight of the evidence. Given the major concerns such as drug use and a lack of a stable environment, regardless of Perfetti's contention that she has made progress and will continue to do so, we emphasize that "it was the General Assembly's purpose in establishing the present procedures for the termination

19

of parental rights 'to prevent children from lingering in foster care.'" (Citation omitted.) *In re J.G.*, 11th Dist. Lake No. 2015-L-102, 2016-Ohio-896, ¶ 77.

**{¶72}** The second through fourth assignments of error are without merit.

**{¶73}** Based on the foregoing, the judgment of the Lake County Court of Common Pleas, Juvenile Division, granting permanent custody of A.J.P.-H., T.M.P.-H., and L.M.P.-H. to LCDJFS, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, P.J., concurs,

THOMAS R. WRIGHT, J., concurs in part; concurs in judgment only in part with a Concurring Opinion.

_____

THOMAS R. WRIGHT, J., concurs in part; concurs in judgment only in part with a Concurring Opinion.

**{¶74}** Under her first assignment, appellant asserts that R.C. 2151.414(B)(1)(d) violates her constitutional rights to due process for two reasons: (1) the statute permits the termination of parental rights without a finding that she is an unfit parent; and (2) the statute is arbitrary because it puts a fixed time limit for her to overcome her substance abuse problem. While I agree with the majority's disposition of her first assertion, I do not agree that appellant lacks standing to contest whether the time limit is arbitrary.

**{¶75}** The majority's reliance upon *In re A.J.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, is misplaced. In *A.J.*, the parent correctly noted that, after the juvenile court finds that the criterion under R.C. 2151.414(B)(1)(d) is applicable, the

20

court must also determine whether the termination of parental rights is in the child's best interest. The parent further noted that one of the statutory factors for determining the child's best interest is identical to the R.C. 2151.414(B)(1)(d) criterion: i.e., has the child been in the state's custody for twelve or more months of a consecutive twenty-two month period? Based upon this, the *A.J.* parent contended that the statutory scheme violated due process because it allowed the juvenile court to predicate its entire decision to terminate upon a single factual finding.

{¶76} The *A.J.* court held that the parent lacked standing to make that argument because the trial court did not predicate its best interest analysis solely upon a "12 of 22" finding, but also cited other statutory factors in support of its determination. *Id.* at ¶48-49. Although I have no qualms with the *A.J.* standing analysis, it has no application to the argument appellant asserts in this case. Unlike the parent in *A.J.*, appellant argues that R.C. 2151.414(B)(1)(d) violates due process because a parent is not given sufficient time to overcome or modify the behavior problem that caused the initial removal of the children.

{¶77} In order to terminate a person's parental rights, the state must satisfy a two-prong conjunctive test: i.e., application of one of the four criteria listed under R.C. 2151.414(B)(1) and the best interest of the children. If appellant were to establish that R.C. 2151.414(B)(1)(d) is unconstitutional, the first prong would be unsatisfied warranting reversal. She has standing to assert her "arbitrary" argument as the challenged statute, if unconstitutional, has caused her injury, the very definition of standing. How the majority finds otherwise escapes me.

{¶78} Nevertheless, I further conclude that appellant's argument is without merit.

21

The time period affords a parent sufficient time to resolve parenting issues. In *In re Workman*, 4th Dist. Vinton No. 02CA574, 2003-Ohio-2220, the parent challenged the constitutionality of R.C. 2151.414(B)(1)(d) on the basis that it did not require a finding that the parent was unfit to care for the child. The *Workman* court stated that since the statute gives a parent twelve months to establish that she is fit to care for the child, she "is not deprived of the ability to be reunified with the child or to demonstrate the parent's ability, suitability, or fitness to care for the child." *Id.* at ¶40.

{¶79} Moreover, "[t]he '12 of 22' provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. See *In re K.G.*, 2004-Ohio-1421 at ¶ 19. Through the '12 of 22' provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. *Id.* at ¶ 21; * * *." *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶22.

{¶80} A parent's relationship with her child is included among the rights that are protected under the Fourteenth Amendment against unwarranted usurpation, disregard, or disrespect by the state. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶17, quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). Thus, since R.C. 2151.414(B)(1)(d) affects a fundamental right, it is subject to the strict-scrutiny test under a substantive due process analysis. "A statute survives strict scrutiny if it is narrowly tailored to serve a compelling state interest." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶18.

{¶81} Given the importance of bringing stability to a child's life, a parent cannot be given unlimited time to modify behavioral problems. As a result, a parent must act with the utmost diligence to make the necessary changes to provide a safe environment for the child as soon as possible. Therefore, I conclude that R.C. 2151.414(B)(1)(d) survives strict scrutiny because it serves a compelling state interest, i.e., the goal of bringing stability to a child's life as soon as possible, while still giving the parent a fair opportunity to resolve her parenting issues.

{¶82} Consistent with the foregoing, I concur in judgment only as to appellant's "arbitrary" argument under her first assignment. In all other respects, I concur in both judgment and analysis.