[Cite as *In re J.R.*, 2015-Ohio-3280.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

IN RE: J.R.

C.A. No.     15AP0014

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     10-2269-AND

DECISION AND JOURNAL ENTRY

Dated: August 17, 2015

CARR, Judge.

{¶1}    Appellant, Steven J. ("Father") appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor child and placed the child in the permanent custody of Wayne County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}    Father is the natural father of J.R., born December 7, 1998.  Although J.R.'s mother and her older sister were parties to the trial court proceedings, neither is a party to this appeal.  J.R.'s mother has had no involvement in her life for many years and, at the time of the permanent custody hearing, the mother's whereabouts were unknown.

{¶3}    When J.R. was approximately two years old, her parents placed her in the legal custody of her paternal grandmother for reasons that are not clear from the record.  On November 23, 2010, CSB filed a complaint to allege that J.R. was a dependent child because her

grandmother was no longer able to provide suitable care for her. The grandmother, who was then over the age of 80, was suffering from dementia and other health problems. J.R. was later adjudicated a dependent child and placed in the temporary custody of CSB.

{¶4} CSB developed a case plan and attempted to reunify J.R. with either her grandmother or Father. As the grandmother's physical and mental condition continued to decline, however, it became apparent that J.R. could not return to her custody. Because Father had expressed an interest in providing a home for J.R., the case plan included reunification goals for him that focused on him receiving mental health treatment. Father apparently did not stabilize his mental health during the case planning period.

{¶5} On September 28, 2012, CSB moved the trial court to place J.R. in a planned permanent living arrangement ("PPLA"), alleging that J.R. had been in temporary custody for nearly two years, that she maintained a significant bond with her grandmother and Father, but that the grandmother was not able to take custody of her because of her declining health and advancing age and Father could not provide a stable home because of his unresolved mental health problems. On February 1, 2013, following a hearing on the motion and pursuant to an agreement of the parties, the trial court placed J.R. in a PPLA pursuant to R.C. 2151.415(C)(1)(b).

{¶6} During J.R.'s PPLA placement, Father refused case plan services from CSB and it is unclear whether he pursued mental health treatment on his own. The grandmother's mental and physical health declined and she eventually moved to a nursing home. J.R. continued to visit Father and her grandmother on a monthly basis. During that period, however, Father's behavior during visits was often inappropriate and his relationship with J.R. deteriorated so much that J.R. asked to have the visits terminated. After living with the same foster parents for an extended

period of time, J.R. had become assimilated into their family. The foster mother ultimately contacted CSB about adopting J.R.

{¶7} On June 3, 2014, CSB moved for permanent custody of J.R. Following a hearing on the motion, the trial court terminated Father's parental rights and placed J.R. in the permanent custody of CSB. Father appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF J.R. TO [CSB] BECAUSE ITS DETERMINATION THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING [ ] PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WHEN THE CHILD WAS ALREADY IN THE LEAST RESTRICTIVE PLACEMENT OF PLANNED PERMANENT LIVING ARRANGEMENT[.]

{¶8} Because both of Father's assignments of error challenge the trial court's finding that permanent custody was in the best interest of J.R., this Court will address them together. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).

*See* Former R.C. 2151.414(B)(1)[1] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The trial court found that the first prong of the permanent custody test had been satisfied because J.R. had been in the temporary custody of CSB for more than 12 of the prior 22 months. Father does not contest the trial court's 12 of 22 finding on appeal, but instead confines his challenge to the trial court's conclusion that permanent custody was in the best interest of J.R. In fact, as CSB began to present evidence about Father's mental health at the hearing, the trial judge and all counsel agreed that CSB was not required to prove that Father's mental health prevented him from providing a suitable home for J.R. because the 12 of 22 ground had been established under R.C. 2151.414(B)(1)(d). For that reason, CSB offered little evidence about Father's mental health problems or other parenting obstacles that could have satisfied an alternate ground under R.C. 2151.414(E) to satisfy the first prong of the permanent custody test.

{¶10} In not reaching the 12 of 22 issue, this opinion should not be construed as an implicit agreement with the reasoning of other appellate districts that a child's time in PPLA constitutes "temporary custody" for purposes of the statutory "12 of 22" calculation. *See, e.g.*, *In re Celano*, 5th Dist. Stark No. 2007 CA 00141, 2007-Ohio-5645; *In re J.I.*, 12th Dist. Preble No. CA 2005-05-008, 2005-Ohio-4920. If this issue were properly before us, this Court would examine the record to determine whether the agency had continued to offer reasonable reunification efforts to the parents during the PPLA placement. Implicit in the 12 of 22 prong of the permanent custody test is the requirement that, absent a reasonable efforts bypass under R.C. 2151.419(A)(2), the agency offered at least 12 months of reasonable reunification efforts within the 22 months immediately preceding the filing of the motion. *See In re C.W.*, 104 Ohio St.3d

---

[1] R.C. 2151.414(B)(1) was amended effective September 17, 2014.

163, 2004-Ohio-6411, ¶ 22; *In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, 03CA0068, 2004-Ohio-1421, ¶ 20-21.

{¶11} Because the first prong of the permanent custody test has not been challenged on appeal, however, we confine our review to whether the evidence established that permanent custody was in the best interest of J.R. When determining a child's best interest under R.C. 2151.414(D), the juvenile court must consider all the relevant enumerated factors: the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶12} The caseworker testified at the permanent custody hearing that CSB had pursued the PPLA placement because J.R. was closely bonded with her grandmother, who had been her primary caretaker for most of her life. Although J.R. still had a positive relationship with her grandmother, the grandmother supported the permanent custody motion because her health was declining and the foster parents had agreed to continue bringing J.R. to the nursing home to visit her.

{¶13} J.R. did not have a similar bond with Father. Father had spent time in the military and it is unclear how much interaction he had with J.R. while she lived with her grandmother for more than ten years. J.R.'s interaction with Father during the four years prior to the hearing had been limited to supervised visitation because Father did not resolve his mental health problems. CSB offered Father case planning services after J.R. was placed in PPLA, but Father asked to be removed from the case plan because he did not believe that he needed treatment.

{¶14} Since J.R. was placed in PPLA with her current foster family, Father visited her monthly for supervised visits. Although Father attended the scheduled visits consistently, the

caseworker testified that she often had to intervene to redirect Father's behavior. She explained that, rather than engaging in activities or appropriate conversation with J.R., Father tended to criticize her, the grandmother, or CSB.

{¶15} The caseworker testified that Father's criticism of J.R. and others was upsetting to J.R. and caused her to cry during many of the visits. Despite the caseworker's efforts to redirect Father's behavior, as well as J.R. developing an ability to stand up for herself when Father criticized her, the interaction between Father and J.R. did not improve over time. J.R.'s counselor testified that, although J.R. loved Father and did not want to upset him, her visits with Father made her so anxious that she wanted to stop visiting him. The caseworker and guardian ad litem agreed that J.R.'s visits with Father should stop because they were negatively affecting her.

{¶16} J.R.'s relationship with her foster family, on the other hand, was positive. By the time of the hearing, she had been living with the family for more than two years. J.R. had bonded with the entire family including all of her foster siblings. She enjoyed participating in their many family activities and wanted to be adopted into the family. The foster mother testified that she loved J.R. as much as her other children and wanted to adopt her.

{¶17} J.R. supported the motion for permanent custody because she wanted to be adopted by the foster family. In fact, it was J.R. who asked the foster mother to adopt her, which prompted CSB to move for permanent custody.

{¶18} J.R.'s custodial history included more than ten years living with her grandmother. Since June 2011, J.R. had been living in the custody of CSB and had not been placed with any of her biological family. She was in need of a legally secure permanent placement, but Father and the grandmother were unable to provide her with a permanent home at that time. Although

Father argues that J.R. could have remained in the PPLA placement, the best interest prong of the test requires "a weighing of all the relevant factors" and does not require or permit that the availability of a placement that would preserve parental rights be an all-controlling factor. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 64. Moreover, the facts of this case included that J.R. was almost 18 years old and had expressed her desire that she did not want to continue in that placement. She wanted to be adopted by the foster parents who were willing and able to provide her with a permanent home. Consequently, the trial court reasonably concluded that a legally secure permanent placement would be achieved by placing J.R. in the permanent custody of CSB and that permanent custody was in her best interest. Father's assignments of error are overruled.

### III.

{¶19} Father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

CONRAD G. OLSON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and MELODY L. BRIAND, Assistant Prosecuting Attorney, for Appellee.

NIKKI REED, Guardian ad Litem.