[Cite as *In re C.C.*, 2017-Ohio-8620.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: C.C.
     L.C.

C.A. Nos.     17CA0008-M
                17CA0009-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE Nos.    2011 08 DE 0029
             2013 03 DE 0005

DECISION AND JOURNAL ENTRY

Dated: November 20, 2017

---

TEODOSIO, Judge.

{¶1}    Appellant, Medina County Job and Family Services ("MCJFS"), appeals from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that denied its motion to change the dispositional placement of two minor children from planned permanent living arrangements to permanent custody. This Court affirms.

I.

{¶2}    Patricia A. ("Mother") is the mother of L.C., born March 29, 2001; and C.C., born July 20, 2002. Mother has other children who remain in her custody and are not parties to this appeal. The children's father did not make an appearance at the permanent custody hearing and did not file a brief in this appeal.

{¶3}    C.C. has struggled with mental health and behavioral problems for most of his life and began receiving mental health treatment before MCJFS became involved with this family.

C.C. came into MCJFS custody during 2011 because his mental health and behavioral problems had continued to escalate and he posed a safety threat to himself and others in Mother's home. C.C. was adjudicated a dependent child and placed in the temporary custody of MCJFS.

{¶4} Despite ongoing treatment, C.C.'s mental health and behavioral problems were not stabilized and he could not safely be returned home. He was placed in a planned permanent living arrangement ("PPLA") at the end of 2012. He has lived in different foster homes, residential mental health facilities, group homes, and a juvenile detention facility since that time. Most recently, he had been living in the same group home treatment facility for several years and was making progress toward stabilizing his mental health and behavior.

{¶5} L.C.'s mental health and behavioral problems escalated after C.C. was removed from the family's home. He came into MCJFS custody during 2013, after he had been involved in multiple delinquency cases and Mother feared for the safety of the other family members in the home. Mental health treatment did not resolve the threat that L.C. posed to others and himself, so he was placed in a PPLA during February 2014.

{¶6} L.C. has also been placed in several different mental health treatment facilities. He was eventually placed at the same group home facility as C.C., but would soon be transferred to a more secure facility because he had repeatedly threatened to harm himself and others there.

{¶7} The trial court conducted annual hearings to review the continued appropriateness of the children's PPLA placements. *See* R.C. 2151.417(C). During September 2015, the trial court reviewed their placements and again ordered that the children continue in PPLA placements because of their serious mental health and behavioral problems and their bond with Mother. At the time that each child was placed in a PPLA placement, they qualified under former R.C. 2151.353(A)(5)(a) because the agency requested the PPLA placements, their mental

health problems prevented them from being able to live in a family-like setting and required them to remain in residential or institutional care for the foreseeable future, and the trial court determined that a PPLA placement was in their best interest. At that time, although the other two subsections of R.C. 2151.353(A)(5) required that the child be at least 16 years old to be placed in a PPLA, R.C. 2151.353(A)(5)(a) did not include an age requirement for the child.

{¶8} On July 5, 2016, MCJFS filed a motion to modify the children's PPLA placements to permanent custody. It alleged numerous grounds for permanent custody, all premised on its understanding that the children did not meet the new age criteria for PPLA placements. The agency would later explain that a change in federal law and a pending change in Ohio law that would become effective on September 13, 2016, would require that any child be at least 16 years old to be placed in a PPLA. *See* R.C. 2151.353(A)(5). Because C.C. and L.C. were not yet 16 years old, MCJFS believed that they no longer qualified for PPLA placement.

{¶9} Without seeking a legal determination from the trial court about whether the upcoming change in Ohio law would disqualify these children from remaining in PPLA placements, MCJFS proceeded with its permanent custody motion. Instead of holding a PPLA review hearing, the trial court scheduled the case for a permanent custody hearing.

{¶10} Following the permanent custody hearing, the trial court found that the children had been in MCJFS custody for more than 12 months of a consecutive 22-month period, but that permanent custody was not in their best interest. Consequently, it denied the agency's motion for permanent custody. MCJFS appeals, raising one assignment of error.

{¶11} After requiring briefing by the parties regarding whether MCJFS has appealed from a final, appealable order, this Court provisionally found that we had jurisdiction to consider the merits of the appeal. The parties have raised no additional grounds or arguments in their

appellate briefs to cause this Court to revisit its preliminary finding of jurisdiction. Consequently, this Court will address the merits of the agency's assignment of error.

II.

**ASSIGNMENT OF ERROR**

> THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE AGENCY'S MOTION FOR A MODIFICATION OF DISPOSITION FROM [PPLA] TO PERMANENT CUSTODY.

{¶12} The agency's sole assignment of error challenges the trial court's decision to deny its motion for permanent custody. This Court begins its review by emphasizing that, although the parties dispute whether the statutory addition of a minimum age requirement for all PPLA placement applies to these children, that dispute will not be resolved in this appeal. MCJFS did not seek a determination of that issue from the trial court, nor did the trial court answer that legal question. Moreover, the agency relied on a change in federal law and an upcoming change in Ohio law. The authority of a juvenile court in abuse, dependency, and neglect cases is not controlled by federal legislation but is strictly governed by the comprehensive statutory scheme set forth in R.C. Chapter 2151. *See, e.g., In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 35. The dispositional authority of the juvenile court to place children who have been adjudicated abused, neglected, and/or dependent is governed by R.C. 2151.353. The relevant amendment to R.C. 2151.353(A)(5) did not become effective until months after MCJFS filed its permanent custody motion. The issue of whether the upcoming change in Ohio law affected the PPLA placements of these children was not before the trial court because "'a motion for permanent custody must allege grounds that currently exist.'" *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 24, quoting *In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, and 03CA0068, 2004-Ohio-1421, ¶ 13.

{¶13} The sole issue before this Court on appeal is whether the trial court erred in concluding that MCJFS failed to present clear and convincing evidence to establish grounds for permanent custody of C.C. and L.C. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶14} Although MCJFS alleged multiple grounds under the first prong of the permanent custody test, the trial court limited its finding to the fact that the children had been in the custody of MCJFS for more than 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). Although the parties do not challenge the propriety of that finding, R.C. 2151.414(B)(1)(d) requires that the children remain in the "temporary" custody of an agency for at least 12 of 22 months. By definition, the children's PPLA placements were dispositional orders that gave MCJFS "legal custody" of the children, not "temporary custody." *See* former R.C. 2151.011(B)(38)(a). This Court has questioned whether time in a PPLA placement qualifies as time spent in the agency's temporary custody for purposes of R.C. 2151.414(B)(1)(d). *See In re J.R.*, 9th Dist. Wayne No. 15AP0014, 2015-Ohio-3280, ¶ 10. Nevertheless, because this is a review of the trial court's denial of permanent custody, which the

trial court supported with its best interest determination, we need not address the propriety of its "12 of 22" finding in this appeal.

{¶15} The trial court denied the motion for permanent custody because it found that permanent custody was not in the best interest of C.C. or L.C. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and the need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶16} The evidence was not disputed that Mother had a positive relationship with both children and that, throughout the lengthy period that each child has been placed in agency custody, Mother remained actively involved in their cases and maintained ongoing interaction with them. Although the children had lived in multiple different locations throughout the state, Mother visited them regularly and spoke to their caseworker two or three times a week. At the time of the permanent custody hearing, both boys were living in a facility in Toledo, which was a two and one-half hour drive from Mother's home in Medina County. Because Mother had four other children at home, she was able to visit that facility only once a month. When either child had resided closer to her home, Mother visited much more often.

{¶17} Mother also spoke to the boys on the telephone. The trial court heard testimony about two recent incidents in which L.C. exhibited serious behavioral outbursts, but Mother was able to protect his wellbeing via telephone contact. During one incident, L.C. climbed 40 feet up a tree and threatened to hang himself. After being unable to persuade L.C. to come out of the tree, the facility contacted Mother via telephone. Mother was able to calm him down and persuade L.C. to come out of the tree so that he could be transported to a psychiatric crisis

center. Another time, L.C. ran away from the facility and reached out to Mother on a pay phone. Mother was able to determine his approximate location and contacted the police to pick him up and bring him to safety.

{¶18} C.C. and L.C. had both consistently expressed their wishes to return to Mother's home. No one disputed that they could not safety return home because of their serious mental health and behavioral problems, however. Each child had multiple mental health diagnoses and continued to struggle with periods of serious behavioral problems during which they posed a threat to the safety of others and/or themselves. Mental health experts agreed that C.C. and L.C. would require ongoing therapeutic residential treatment for the foreseeable future.

{¶19} Even if the children could not be returned to Mother's home, C.C. and L.C. opposed permanent custody because they wanted to maintain their bond and legal relationship with Mother. Witnesses agreed that that if C.C. and L.C. were to lose their ongoing relationship with Mother, they would suffer grief and trauma, which would further exacerbate their mental health and behavioral problems.

{¶20} C.C.'s guardian ad litem had been working with him for five years. He testified that he was "adamant against" the agency's motion for permanent custody. He believed that C.C. should remain in a PPLA placement because it was in his best interest to stay where he was and maintain an ongoing relationship with Mother.

{¶21} L.C.'s guardian ad litem had worked with him for four years, beginning with his delinquency cases. He recommended permanent custody "if the law requires" such a placement. He also emphasized that Mother should be permitted to be involved in L.C.'s life for "as long as possible" because she has always been positively involved with him and was "the one constant in his life."

**{¶22}** C.C. and L.C. had remained in agency custody for several years. Although they needed permanence in their lives, there was no other option for them than to continue living in out-of-home therapeutic placements for the foreseeable future. These children could not be returned to Mother's home, but they also could not be placed in a foster home or an adoptive home. MCJFS has failed to demonstrate that the trial court erred in concluding that permanent custody was not in the best interest of C.C. or L.C. The agency's sole assignment of error is overruled.

## III.

**{¶23}** The agency's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

–––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JENNIFER A. MOORE, Attorney at Law, for Appellant.

PAUL GRANT, Attorney at Law, for Appellee.

JAMES ARMSTRONG, Guardian ad Litem.

KRISTOPHER AUPPERLE, Guardian ad Litem.

JEREMY SZUCS, Guardian ad Litem.